# 24-

## United States Court of Appeals

*for the*

## Second Circuit

LORI BAZINETT, individually and on behalf of others similarly situated,

*Plaintiff-Respondent,*

– v. –

PREGIS LLC,

*Defendant-Petitioner.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

## APPENDIX TO PETITION FOR PERMISSION TO APPEAL
## PURSUANT TO 28 U.S.C. § 1292(b) AND FRAP 5(a)(3)

ROBERT M. TUCKER
OGLETREE DEAKINS
*Attorneys for Defendant-Petitioner*
599 Lexington Avenue, Suite 1700
New York, New York 10022
(212) 492-2500

CP COUNSEL PRESS     (800) 4-APPEAL • (334093)

**i**

## TABLE OF CONTENTS

| | Page |
|---|---|
| Class Action Complaint, dated April 10, 2023 .......... | A-1 |
| Memorandum Decision and Order of the Honorable Mae A. D'Agostino, dated March 14, 2024............ | A-7 |
| Memorandum Decision and Order of the Honorable Mae A. D'Agostino, dated October 24, 2024 ........ | A-26 |

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| LORI BAZINETT, individually and on behalf of all others similarly situated, | Civil Action No. |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| PREGIS LLC, | |
| Defendant. | |

## <u>NATURE OF THE ACTION</u>

1.      This is a class action on behalf of all employees of Pregis LLC ("Defendant") in the State of New York that engage in manual work in the course of their employment.

2.      New York Law requires companies to pay their manual workers on a weekly basis unless they receive an express authorization to pay on a semi-monthly basis from the New York State Department of Labor Commissioner. *See* New York Labor Law ("NYLL"), Article 6, §191.

3.      Defendant has received no such authorization from the New York State Department of Labor Commissioner.

4.      The New York Court Of Appeals has explained that this law is "intended for the protection of those who are dependent upon their wages for sustenance." *People v. Vetri*, 309 N.Y. 401, 405 (citing former Labor Law § 196).

5.      Defendant has violated this law by paying its manual workers every other week rather than on a weekly basis.

6.      Plaintiff therefore demands liquidated damages, interest, and attorneys' fees individual and on behalf of a putative class comprised of all manual workers employed by

A-1

Defendant in New York State over the last six years.

## JURISDICTION AND VENUE

7.      This Court has personal jurisdiction over Defendant because Defendant's principal place of business is in Deerfield, Illinois.

8.      This Court has subject matter jurisdiction over this proposed class action pursuant to 28 U.S.C. § 1332(d), which, under the provisions of the Class Action Fairness Act ("CAFA"), explicitly provides for the original jurisdiction of the federal courts in any class action in which at least 100 members are in the proposed plaintiff class, any member of the plaintiff class is a citizen of a State different from any defendant, and the matter in controversy exceeds the sum of $5,000,000.00, exclusive of interest and costs.  Plaintiff alleges that the total claims of individual members of the proposed Class (as defined herein) are well in excess of $5,000,000.00 in the aggregate, exclusive of interest and costs.

9.      Venue is proper in this District under 28 U.S.C. § 1391(b)(1) because this is a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred.

## PARTIES

10.     Defendant Pregis LLC is a Delaware liability company with a principal place of business in Deerfield, Illinois.  Defendant is a leading global manufacturer of flexible packaging and protective packaging solutions.

11.     Plaintiff Lori Bazinett is a citizen of New York who resides in Lake Luzerne, New York.  Ms. Bazinett was employed by Defendant from approximately April 2021 to October 2021 as a shipper/receiver at a Pregis location in Glens Falls, New York.  More than 25% of her job responsibilities at Pregis included manual labor, including tasks such as filling shipment loads into trailers, picking orders in the warehouse, processing and tagging orders,

A-2

loading and unloading incoming and outgoing shuttles to the warehouse, and operating a forklift. Ms. Bazinett was paid every other week, rather than weekly, during her employment with Defendant. Thus, for half of each biweekly pay period, Ms. Bazinett was injured in that she was temporarily deprived of money owed to her, and she could not invest, earn interest on, or otherwise use these monies that were rightfully hers. Accordingly, every day that said money was not paid to her in a timely fashion, she lost the time value of that money.

## CLASS ACTION ALLEGATIONS

12.     Pursuant to Fed. R. Civ. P. 23, Plaintiff seeks to represent a class defined as all persons employed by Defendant in the State of New York over the last six years who (1) earned nine hundred dollars a week or less; and/or (2) did not did not have the authority to hire and fire other employees (the "Class"). Members of the Class include but are not limited to persons employed by Defendant in the following capacities: shipper/receiver, material handler, converting operator, production packer, driver, and other hourly-paid employees who perform similar physical tasks. Excluded from the class are salaried, executive employees, and those responsible for hiring and/or firing employees that are also paid in excess of nine hundred dollars a week.

13.     Persons employed in each of these capacities were required to spend more than 25% of their time engaged in physical labor.

14.     Members of the Class are so numerous that their individual joinder herein is impracticable. On information and belief, members of the Class number in the thousands. The precise number of Class members and their identities are unknown to Plaintiff at this time but may be determined through discovery. Class members may be notified of the pendency of this action by mail and/or publication through the employment records of Defendant.

15.     Common questions of law and fact exist as to all Class members and predominate

3

A-3

over questions affecting only individual Class members. Common legal and factual questions include, but are not limited to: whether Defendant was required to pay class members on a weekly basis, whether class members were paid on a weekly basis, and whether Defendant violated NYLL § 191.

16.     The claims of the named Plaintiff are typical of the claims of the Class in that the named Plaintiff worked as a manual worker for Defendant during the class period but was not provided with compensation for her work on a weekly basis.

17.     Plaintiff is an adequate representative of the Class because her interests do not conflict with the interests of the Class members she seeks to represent, she has retained competent counsel experienced in prosecuting class actions, and she intends to prosecute this action vigorously. The interests of Class members will be fairly and adequately protected by Plaintiff and her counsel.

18.     The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of the Class members. Each individual Class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

4

A-4

## CLAIMS FOR RELIEF

## COUNT I

### New York Labor Law – Failure to Pay Timely Wages

19.     Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

20.     The timely payment of wages provisions, NYLL § 191, and its supporting regulations apply to Defendant and protect Plaintiff and the Class.

21.     Defendant failed to pay Plaintiff and the Class on a timely basis as required by NYLL § 191(1)(a).

22.     Due to Defendant's violations of the NYLL, Plaintiff and the Class are entitled to recover from Defendant the amount of their untimely paid wages as liquidated damages, reasonable attorneys' fees and costs, and pre-judgment and post-judgment interest as provided for by NYLL § 198.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seek judgment against Defendant, as follows:

a.     For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Class and Plaintiff's attorneys as Class Counsel to represent the Class members;

b.     For an order declaring Defendant's conduct violates the law referenced herein;

c.     For an order finding in favor of Plaintiff and the Class on the count asserted herein;

d.     For liquidated damages in amounts to be determined by the Court and/or jury;

e.     For prejudgment interest on all amounts awarded; and

f.     For an order awarding Plaintiff and the Class their reasonable attorneys' fees, expenses, and costs of suit.

A-5

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable of right.

Dated: April 10, 2023

Respectfully Submitted,

**BURSOR & FISHER, P.A**

By: */s/ Yitzchak Kopel*
     Yitzchak Kopel

Philip L. Fraietta
Yitzchak Kopel
Alec M. Leslie (*pro hac vice* forthcoming)
888 Seventh Avenue
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email: ykopel@bursor.com
       aleslie@bursor.com

*Counsel for Plaintiff*

A-6

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**LORI BAZINETT, individually and on behalf**
**of all other similarly situated,**

                                              **Plaintiff,**

            vs.                                                    **1:23-CV-790**
                                                                   **(MAD/ML)**

**PREGIS LLC,**

                                              **Defendant.**
_____

**APPEARANCES:**                         **OF COUNSEL:**

**BURSOR & FISHER P.A.**                 **YITZCHAK KOPEL, ESQ.**
1330 Avenue of the Americas
32nd Floor
New York, New York 10019
Attorney for Plaintiff

**OGLETREE DEAKINS**                     **KELLY M. CARDIN, ESQ.**
599 Lexington Avenue                     **CAITLIN L. O'FALLON, ESQ.**
Ste 17th Floor
New York, New York 10022
Attorneys for Defendant

**Mae A. D'Agostino, U.S. District Judge:**

### MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

On April 10, 2023, Plaintiff filed a complaint in the United States District Court for the

Northern District of Illinois alleging violations of New York Labor Law ("NYLL") for

Defendant's failure to timely pay wages. *See* Dkt. No. 1. The parties moved to transfer the case

to this Court, *see* Dkt. No. 19, which the Northern District of Illinois granted. *See* Dkt. No. 22.

The case was transferred to this Court on June 27, 2023. *See* Dkt. No. 23. Presently before the

1

A-7

Court is Defendant's motion to dismiss Plaintiff's complaint for lack of standing and failure to state a claim. *See* Dkt. Nos. 14, 15. Plaintiff responded in opposition, *see* Dkt. No. 28, and Defendant replied. *See* Dkt. No. 31. Plaintiff subsequently submitted six notices of supplemental authority. *See* Dkt. Nos. 32, 33, 34, 35, 36, 38. Defendant submitted one notice of supplemental authority. *See* Dkt. No. 37.

For the following reasons, Defendant's motion to dismiss is denied.

## II. BACKGROUND

Plaintiff resides in Lake Luzerne, New York. *See* Dkt. No. 1 at ¶ 11. Defendant is a Delaware limited liability company with its principal place of business in Deerfield, Illinois. *See id.* at ¶ 10. Defendant manufactures flexible packaging and protective packaging solutions. *See id.* Plaintiff was employed by Defendant from April to October 2021 as a shipper/receiver at Defendant's location in Glens Falls, New York. *See id.* at ¶ 11. Plaintiff alleges that more than twenty-five percent of her job responsibilities "included manual labor, including tasks such as filling shipment loads into trailers, picking orders in the warehouse, processing and tagging orders, loading and unloading incoming and outgoing shuttles to the warehouse, and operating a forklift." *Id.* She contends that she was paid every other week, which deprived her of the money owed to her during "half of each biweekly pay period." *Id.* Plaintiff asserts one cause of action, under New York Labor Law section 191, for failure to timely pay wages because "she could not invest, earn interest on, or otherwise use the[] monies that were rightfully hers." *See id.* at ¶¶ 11, 19-22. She seeks declaratory relief, liquidated damages, and attorneys' fees and costs. *See id.* at 5.

2

A-8

New York Labor Law section 191 states, in relevant part: "A manual worker shall be paid weekly and not later than seven calendar days after the end of the week in which the wages are earned." N.Y. Lab. L. § 191(1)(a)(i).  New York Labor Law section 198 provides:

> In any action instituted in the courts upon a wage claim by an employee or the commissioner in which the employee prevails, the court shall allow such employee to recover the full amount of any underpayment, all reasonable attorney's fees, prejudgment interest . . . and, unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law, an additional amount as liquidated damages equal to one hundred percent of the total amount of the wages found to be due.

N.Y. Lab. L. § 198(1-a).

Defendant moves to dismiss Plaintiff's complaint, arguing that New York Labor Law section 191 does not provide for a private right of action. *See* Dkt. No. 15 at 4.  Defendant also argues that Plaintiff cannot establish standing because she has not alleged an injury in fact. *See id.* at 6.

### III. DISCUSSION

#### A.    Standard of Review

"'A court faced with a motion to dismiss pursuant to both Rules 12(b)(1) and 12(b)(6) must decide the jurisdictional question first because a disposition of a Rule 12(b)(6) motion is a decision on the merits and, therefore, an exercise of jurisdiction.'" *Dutrow v. N.Y.S. Gaming Commission*, No. 13-CV-996, 2014 WL 11370355, *3 (E.D.N.Y. July 29, 2014), *aff'd*, 607 Fed. Appx. 56 (2d Cir. 2015) (quoting *Magee v. Nassau Cnty. Med. Ctr.*, 27 F. Supp. 2d 154, 158 (E.D.N.Y. 1998)); *see also Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430-31 (2007) (citation omitted) ("[A] federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit ([*i.e.*,]

A-9

subject-matter jurisdiction)").  "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).

When subject matter jurisdiction is challenged, a "[p]laintiff[] bear[s] the burden of 'showing by a preponderance of the evidence that subject matter jurisdiction exists.'" *APWU v. Potter*, 343 F.3d 619, 623 (2d Cir. 2003) (quoting *Lunney v. United States*, 319 F.3d 550, 554 (2d Cir. 2003)).  In reviewing a motion to dismiss under Rule 12(b)(1), the Court "must accept as true all material factual allegations in the complaint, but [is] not to draw inferences from the complaint favorable to plaintiffs." *J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004) (citation omitted).  The Court "may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional issue, but [ ] may not rely on conclusory or hearsay statements contained in the affidavits." *Id.* (citations omitted).

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the party's claim for relief.  *See Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007) (citation omitted).  In considering the legal sufficiency, a court must accept as true all well-pleaded facts in the pleading and draw all reasonable inferences in the pleader's favor.  *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted). This presumption of truth, however, does not extend to legal conclusions.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Although a court's review of a motion to dismiss is generally limited to the facts presented in the pleading, the court may consider documents that are "integral" to that pleading, even if they are neither physically attached to, nor incorporated by reference into, the pleading. *See Mangiafico v.*

A-10

*Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002)).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," *see* FED. R. CIV. P. 8(a)(2), with factual "heft to 'sho[w] that the pleader is entitled to relief.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (quotation omitted). Under this standard, the pleading's "[f]actual allegations must be enough to raise a right of relief above the speculative level," *id.* at 555 (citation omitted), and present claims that are "plausible on [their] face." *Id.* at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted). Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [its] claims across the line from conceivable to plausible, the[ ] complaint must be dismissed." *Id.* at 570.

**B.     Standing**

Plaintiff alleges a violation of New York Labor Law § 191 because she was paid every other week rather than on a weekly basis as a manual laborer. *See* Dkt. No. 1 at ¶¶ 5, 11. Defendant argues that Plaintiff's complaint should be dismissed for lack of standing because a statutory violation is insufficient to establish constitutional standing and "Plaintiff fails to plead that she was uncompensated or under-compensated." Dkt. No. 15 at 7. Plaintiff argues that she "has alleged concrete, economic harm: the loss of time value of money owed to her." Dkt. No. 28 at 3 (citing Dkt. No. 1 at ¶ 11).

"Article III, Section 2 of the Constitution limits the subject-matter jurisdiction of the federal courts to 'Cases' and 'Controversies.'" *SM Kids, LLC v. Google LLC*, 963 F.3d 206, 211

(2d Cir. 2020) (citing *Dhinsa v. Krueger*, 917 F.3d 70, 77 (2d Cir. 2019)).  "The doctrine of standing gives meaning to these constitutional limits by 'identify[ing] those disputes which are appropriately resolved through the judicial process.'"  *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157 (2014) (quotation and footnote omitted).

The Supreme Court has "established that the 'irreducible constitutional minimum' of standing consists of three elements."  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)).  "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."  *Id.* (citing *Lujan*, 504 U.S. at 560-61).

The instant motion concerns only the injury-in-fact component of standing.  To establish an injury in fact, a plaintiff "must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'"  *Id.* at 339 (quoting *Lujan*, 504 U.S. at 560).  "To be 'concrete,' an injury 'must actually exist,' . . . that is, it must be 'real, and not abstract.'"  *Strubel v. Comenity Bank*, 842 F.3d 181, 188 (2d Cir. 2016) (quotation omitted).

In its motion to dismiss, Defendant correctly states that the Supreme Court and Second Circuit have held "that in suits for damages[,] plaintiffs cannot establish Article III standing by relying entirely on a statutory violation or risk of future harm: 'No concrete harm; no standing.'"  *Maddox v. Bank of New York Mellon Tr. Co., N.A.*, 19 F.4th 58, 64 (2d Cir. 2021) (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 442 (2021)); *see also* Dkt. No. 15 at 7.  Defendant cites one case that concerns standing and the precise statutory violation at issue in this case: *Rosario v. Icon Burger Acquisition LLC*, No. 21-CV-4313, 2022 WL 198503, *3 (E.D.N.Y. Jan. 21, 2022).  *See* Dkt. No. 15 at 7-8.

A-12

In *Rosario*, the court noted that "the late payment of wages can constitute a concrete harm sufficient to confer standing on a plaintiff who seeks relief under Sections 191 and 198 of the NYLL." *Rosario*, 2022 WL 198503, at *3. However, the court concluded that the "[p]laintiff's barebones Amended Complaint contains no facts from which the Court could plausibly conclude that [the p]laintiff actually suffered the sort of harm that would entitle him to relief." *Id.* The court continued, stating that "[t]he Amended Complaint simply alleges that '[the d]efendant failed to pay [the p]laintiff and the Class on a timely basis as required by the NYLL,' so [the p]laintiff and the class are entitled to damages." *Id.* (quotation omitted). The court determined that "[t]his is insufficient under <u>TransUnion</u> and <u>Maddox</u>." *Id.* (collecting cases). The *Rosario* court agreed that "'[m]oney later is not the same as money now.' But . . . absent factual allegations that the plaintiff forewent the opportunity to invest or otherwise use the money to which he was legally entitled, he cannot plausibly claim he suffered a harm sufficiently concrete to establish Article III standing." *Id.* (quoting *Stephens v. U.S. Airways Grp., Inc.*, 644 F.3d 437, 442 (D.C. Cir. 2011) (Kavanaugh, J., concurring)).

Defendant does not acknowledge that eleven months later, the *Rosario* court, following the plaintiffs' amendment of their complaint, determined that the plaintiffs had standing on their section 191 claim. *See Rosario v. Icon Burger Acquisition LLC*, No. 21-CV-4313, 2022 WL 17553319, *4 (E.D.N.Y. Dec. 9, 2022) (quotations omitted) ("[T]he Court agrees with other courts in this Circuit that it is sufficient for [the p]laintiffs to affirmatively plead injury through the allegation that they were 'temporarily deprived of money owed,' and, consequently, were unable to 'invest, earn interest on, or otherwise use' money that was rightfully theirs").

Plaintiff lists numerous cases to support standing. *See* Dkt. No. 28 at 3-5. Plaintiff relies on *Levy v. Endeavor Air Inc.*, 638 F. Supp. 3d 324, 329 (E.D.N.Y. 2022). *See id.* at 3-4. There, the court distinguished *Maddox* and concluded that

> [u]nlike in *Maddox*, where the harm pleaded as resulting from the statutory violations was at best hypothetical, the harm plausibly pleaded here by [the] plaintiffs as resulting from the violation of § 191 is actualized. To put it differently, the loss of the time value of the money owed to [a] plaintiff is not a harm that might occur, but one that has occurred; it is not a harm that might materialize, but one that has materialized. At its essence, [the] defendant's attack is not one of law, but of economics. [The defendant] refuses to recognize here what it must certainly recognize in the handling of its own business affairs: there is a time value to the possession of money. [The p]laintiffs need not, as [the] defendant suggests, spell out how the time value of money, as an economic theory, applies to their case. It does apply; the delay in payment alleged, due to [the] defendant's unlawful rate-of-payment practices, necessarily means that plaintiffs were forced to wait to receive money that, as compared with when they should have received it, was, when they did receive it, worth less.

*Id.* at 329-30. The court concluded that the plaintiffs did not "need [to] describe how they would have spent their wages had they been timely received. . . . The delay in receiving wages stripped [the] plaintiffs of the opportunity to use funds to which they were legally entitled." *Id.* at 130. "Certainly, in accordance with the Supreme Court's instructions in *TransUnion*, this is an injury sufficiently analogous to harms traditionally recognized at common law." *Id.*

Within the past year, the undersigned has twice rejected Defendant's precise standing argument. *See Petrosino v. Fastenal Co.*, No. 1:22-CV-705, 2023 WL 3496362, *3-4 (N.D.N.Y. May 17, 2023); *Shugars v. Masonite Corp.*, No. 3:22-CV-1237, 2023 WL 7280902, *5 (N.D.N.Y.

Nov. 3, 2023).[1]  Another judge in this District has done the same.  *See Flores v. Cargill Inc.*, No. 1:23-CV-38, 2023 WL 4199252, *3 (N.D.N.Y. June 27, 2023).

In those cases, this Court relied on *Levy* and "the line of federal district court cases . . . which hold that the delayed payment of wages in violation of NYLL § 191 is a concrete harm and injury in fact sufficient for Article III standing." *Petrosino*, 2023 WL 3496362, at *3; *see also Shugars*, 2023 WL 7280902, at *4; *Flores*, 2023 WL 4199252, at *2.

Here, Plaintiff alleged that "she was temporarily deprived of money owed to her, and she could not invest, earn interest on, or otherwise use these monies that were rightfully hers. Accordingly, every day that said money was not paid to her in a timely fashion, she lost the time value of that money."  Dkt. No. 1 at ¶ 11.

Following the plethora cases to conclude as such, the Court finds that Plaintiff's allegation is sufficient to state an injury and establish Article III standing.  *See Shugars*, 2023 WL 7280902, at *5; *Petrosino*, 2023 WL 3496362, at *3-4; *Freeland v. Findlay's Tall Timbers Distribution Ctr., LLC*, No. 22-CV-6415, 2023 WL 4457911, *6-7 (W.D.N.Y. July 11, 2023) (collecting cases).  Thus, Defendant's motion is denied on this issue.[2]

**C.      Private Right of Action**

Defendant argues that there is no express or implied private right of action under section 191 for untimely wage payments.  *See* Dkt. No. 15 at 10; *see also* Dkt. No. 31 at 4-6.

---

[1] Defense counsel in those two cases is from the same law firm as in this case, and was, in one instance, the same attorney.  *See Shugars*, 2023 WL 7280902, at *1.

[2] To the extent that Defendant contends that Plaintiff is not entitled to liquidated damages, the Court finds that this argument is not properly considered on a motion to dismiss. *See Shugars*, 2023 WL 7280902, at *5; *Petrosino*, 2023 WL 3496362, at *5; *Rodrigue v. Lowe's Home Ctrs., LLC*, No. 20-CV-1127, 2021 WL 3848268, *6 (E.D.N.Y. Aug. 27, 2021).

A-15

"Whether NYLL § 191 includes an express or implied private right of action is a question of state law." *Shugars*, 2023 WL 7280902, at *5. "'When deciding a question of state law' like this one, federal courts 'look to the state's decisional law, as well as to its constitution and statutes.'" *Id.* (quoting *Chufen Chen v. Dunkin' Brands, Inc.*, 954 F.3d 492, 497 (2d Cir. 2020). "Absent a clear directive from a state's highest court, a federal court must 'predict how the state's highest court would resolve the uncertainty or ambiguity.'" *Id.* (quotation omitted); *see also Michalski v. Home Depot, Inc.*, 225 F.3d 113, 116-17 (2d Cir. 2000). "In doing so, the federal court 'is bound to apply the law as interpreted by a state's intermediate appellate courts unless there is persuasive evidence that the state's highest court would reach a different conclusion.'" *Shugars*, 2023 WL 7280902, at *5 (quoting *V.S. v. Muhammad*, 595 F.3d 426, 432 (2d Cir. 2010)). The Court may "look to the language of other jurisdictions on the same issue and other sources the state's highest court might rely upon" in order to "undertake the imprecise but necessary task of predicting on a reasonable basis how the New York Court of Appeals would rule." *DiBella v. Hopkins*, 403 F.3d 102, 112-13 (2d Cir. 2005).

At the time of this Court's decision in *Shugars*, there was no New York Court of Appeals decision and one Appellate Division decision addressing the issue of whether section 191 provided a private cause of action. *See Shugars*, 2023 WL 7280902, at *6 (citing *Vega v. CM & Assocs. Constr. Mgmt., LLC*, 175 A.D.3d 1144 (1st Dep't 2019)). The First Department held in *Vega* that "Labor Law § 198(1-a) *expressly* provides a private right of action for a violation of Labor Law § 191." *Vega*, 175 A.D.3d at 1446 (emphasis added). This is because "the term underpayment encompasses the instances where an employer violates the frequency requirements of section 191(1)(a) but pays all wages due before the commencement of an action" and "[t]he moment that an employer fails to pay wages in compliance with section 191(1)(a), the employer

10

pays less than what is required." *Id.* at 1445.  The *Vega* court also concluded section 191 provides for an *implied* right of action because the plaintiff was "one of the class for whose particular benefit the statute was enacted, the recognition of a private right of action would promote the legislative purpose of the statute and the creation of such a right would be consistent with the legislative scheme." *Id.* at 1446.  It explained that "the legislative purpose of section 191 . . . is to protect workers who are generally 'dependent upon their wages for sustenance' . . . and section 198 . . . was enacted to deter abuses and violations of the labor laws." *Id.* (quotations omitted).

This Court explained that it was "bound to apply the law as interpreted by the First Department unless there is 'persuasive evidence' that the New York Court of Appeals 'would reach a different conclusion.'" *Shugars*, 2023 WL 7280902, at *6 (quoting *Muhammad*, 595 F.3d at 432).  The Court noted that "every federal court in the Second Circuit to address the issue has applied *Vega*'s holding finding an express private right of action under Sections 191 and 198(1-a)." *Id.* (collecting cases).  Thus, the Court "join[ed] the chorus of opinions throughout the Second Circuit finding that Plaintiffs have a private right of action (either express or implied) for late payment of wages under the NYLL." *Id.* at *7; *see also Ramirez v. Tifaret Disc., Inc.*, No. 22-CV-10489, 2023 WL 6318616, *8 (S.D.N.Y. Sept. 28, 2023) (quoting *Harris v. Old Navy, LLC*, No. 21-CV-9946, 2022 WL 16941712, *9 (S.D.N.Y. Nov. 15, 2022)) (collecting cases) ("'[S]ince *Vega*, every court in [the Second] Circuit to consider that decision appears to have followed its construction of the New York Labor Law'").

Approximately two months after this Court decided *Shugars*, the Second Department weighed in on the issue.  *See Grant v. Glob. Aircraft Dispatch, Inc.*, 223 A.D.3d 712, —, 2024 WL 172900 (2d Dep't 2024).  The Second Department "respectfully disagree[d] with the reasoning of *Vega* and decline[d] to follow it." *Id.* at *1.  The Second Department held "that

11

A-17

Labor Law § 198 does not expressly provide for a private right of action to recover liquidated damages, prejudgment interest, and attorneys' fees where a manual worker is paid all of his or her wages biweekly, rather than weekly, in violation of Labor Law § 191(1)(a)" nor does it provide for an implied right of action. *Id.* at *4.  It concluded that "[t]he plain language of Labor Law § 198(1–a) supports the conclusion that this statute is addressed to nonpayment and underpayment of wages, as distinct from the frequency of payment . . . and we do not agree that payment of full wages on the regular biweekly payday constitutes nonpayment or underpayment." *Id.* at *1-2.

In concluding as such, the Second Department discussed the New York Court of Appeals decision *Konkur v. Utica Academy of Science Charter School*, 38 N.Y.3d 38 (2022), "in which it declined to conclude that an employer's violation of the prohibition against requesting or demanding a 'return, donation or contribution' of any part of an employees' wages (*i.e.*, kickbacks) (Labor Law § 198–b[2]) constituted a wage claim within the meaning of Labor Law § 198(1–a)." *Id*. at *3.  The *Grant* court summarized the *Konkur* decision by stating that, "the mere fact that a violation of the Labor Law had the effect of reducing employees' wages (even permanently) did not bring that Labor Law violation under the auspices of Labor Law § 198(1–a), which covers nonpayment and partial payment of wages." *Id.* (footnote omitted).

The decision in *Grant* includes a concurrence in part and dissent in part in which one of the four panel members agreed with *Vega*'s conclusion that "Labor Law § 198(1–a) expressly provides a private right of action for a violation of Labor Law § 191, which right may also be implied." *Id.* at *5.  The dissent stated that "the late payment of wages is tantamount to a

12

nonpayment or underpayment of wages, which permits recovery under Labor Law § 198(1–a)." *Id.*[3]

Since the filing of *Grant*, there have been four federal district court opinions issued that address this split in authority. *See Gamboa, et al., v. Regeneron Pharmaceuticals, Inc.*, No. 22-CV-10605, 2024 WL 815253, *1 (S.D.N.Y. Feb. 27, 2024) (continuing to follow Vega and holing that section 198(1-a) provides a private right of action for violations of section 191(1)(a)); *Zachary v. BG Retail, LLC*, No. 22-CV-10521, 2024 WL 554174, *7 (S.D.N.Y. Feb. 12, 2024) (same); *Sarmiento, et al. v. Flagge Contracting Inc., et al.*, No. 22-CV-9718, 2024 WL 806137, *1 (S.D.N.Y. Feb. 27, 2024) (same); *Galante v. Watermark Servs. IV, LLC*, No. 23-CV-6227, 2024 WL 989704, *7 (W.D.N.Y. Mar. 7, 2024) (agreeing with the Second Department's decision in *Grant* and holding that section 198(1-a) does not provide a private right of action, either express or implied, for violations of section 191(1)(a)).[4]

The Court finds the analysis and conclusion in *Zachary* persuasive. As the *Zachary* court explained, "[a]lthough Section 198 does not explicitly reference late wage payments, its text

---

[3] In an earlier decision, the Appellate Term, Second Department, concluded that "[a]s this court is bound by principles of *stare decisis* to follow precedents set by the Appellate Division of another department until the Court of Appeals or the Appellate Division, Second Department, pronounces a contrary rule . . . the decision of the Appellate Division, First Department, in . . . *Vega* . . . is controlling on the issue of whether plaintiff stated a cause of action for damages, pursuant to Labor Law §§ 191(1)(a) and 198(1-a). Thus, the Suffolk County Court erred in dismissing [the] plaintiff's first cause of action." *Phillips v. Max Finkelstein, Inc.*, 73 Misc. 3d 1, 4 (N.Y. App. Term. 2021); *see also Mabe v. Wal-Mart Assocs., Inc.*, No. 1:20-CV-00591, 2022 WL 874311, at *3 (N.D.N.Y. Mar. 24, 2022) (citing *Phillips* and stating that "[c]ontrary to [the d]efendant's previous argument, New York's appellate divisions are not divided as to the application of *Vega*"). The *Grant* court did not discuss *Phillips*. *See Grant*, 2024 WL 172900, at *1-4.

[4] In a separate case, the court noted that the plaintiff in *Grant* filed an application for the Second Department seeking leave to appeal to the Court of Appeals. *See Urena v. Sonder USA, Inc.*, No. 22-CV-7736, 2024 WL 989593, *4 (S.D.N.Y. Mar. 7, 2024). Based on this filing, the court directed the parties to show cause why the court should not stay the case, "pending possible New York Court of Appeals review of the decision in *Grant* . . . ." *Id.*

authorizes employees to bring 'wage claims' for 'underpayment[s]' violative of article 6 of the NYLL, and article 6 includes the pay frequency requirements in Section 191." *Id.* at *7. Additionally, it noted that "the plain language of Section 191 discredits the Grant court's view that Section 198's enforcement mechanism is not triggered when an employer and manual worker agree to a biweekly payment schedule." *Id.* at *8. This is because "NYLL Section 191(2) provides that '[n]o employee shall be required as a condition of employment to accept wages at periods other than as provided in this section.'" *Id.* The *Zachary* court also relied on the legislative history of section 198 which noted an intention "to allow employees 'to recover the full amount of any underpayment,'" and "to enhance penalties for wage theft and benefit low-wage workers struggling to support their families." *Id.* (quoting *Grant*, 2024 WL 172900, at *5). Thus, because "money has a real time value," a late payment is an under payment. *Id.*

The New York Court of Appeals decision in *Konkur* does not alter the Court's agreement with *Zachary*. As the dissent explained in *Grant*, numerous federal district courts have already grappled with *Konkur*'s impact on *Vega*. *See Grant*, 2024 WL 172900, at *5 (collecting cases). Courts have repeatedly noted that *Konkur* concerned a different provision of the New York Labor Law related to kick backs. *See Macchiavello v. ABB/CON-CISE Optical Grp. LLC*, No. 22-CV-8468, 2023 WL 4625009, *5 (S.D.N.Y. July 19, 2023) ("[E]ven if the Court of Appeals were to agree with Konkur that an express private right of action is required, Vega's conclusion that a late payment claim meets the express statutory underpayment claim elements could nevertheless survive"). As the *Zachary* court noted:

> in Konkur, the Court of Appeals distinguished the anti-kickback statute, from which a private right could not be inferred, from the "substantive provisions of Labor Law article 6," like Section 191, which "regulates payment of wages by employers and creates reciprocal rights of employees." Konkur, 38 N.Y.3d at 44.

14

*Zachary*, 2024 WL 554174, at *8; *see also Davis v. Banana Republic LLC*, No. 21-CV-6160, 2023 WL 5969597, *7 (E.D.N.Y. Sept. 14, 2023) ("Though [the d]efendant is correct that the decisions of other district courts within this Circuit are not binding on this Court, it is revealing that not one court has found *Konkur* to present sufficient 'persuasive evidence' to depart from Vega"); *Pozo v. BlueMercury*, Inc., No. 22-CV-7382, 2023 WL 4980217, *4 (S.D.N.Y. Aug. 3, 2023) ("Nothing in *Konkur*, which focused on implied rights of action, constitutes persuasive evidence that the New York Court of Appeals would reject Vega's holding that NYLL § 198(1-a) expressly establishes a private right of action for violations of NYLL § 191"); *Macchiavello*, 2023 WL 4625009, at *5.

In support of its argument that *Vega* was wrongly decided and *Konkur* changes the landscape on this issue, Defendant cites *Georgiou* insofar as that court had "no trouble finding that *Vega*'s alternative holding that there is an implied right of action has been abrogated by *Konkur*." *Georgiou v. Harmon Stores, Inc.*, No. 2:22-CV-02861, 2023 WL 112805, *4 (E.D.N.Y. Jan. 5, 2023); *see* Dkt. No. 15 at 15. Similarly, Defendant cites *Day* which acknowledged that "contrary authority exists, with several state and federal courts doubting, or expressly disagreeing, that NYLL creates a remedy for late, but full, payments of wages." *Day v. Tractor Supply Co.*, No. 22-CV-489, 2022 WL 19078129, *6 (W.D.N.Y 2022). Nevertheless, and unrecognized by Defendant, both of those courts concluded that "[d]espite my doubts about the viability of <u>Vega</u> in light of <u>Konkur</u>, <u>Konkur</u> does not rise to the level of 'persuasive evidence' that the Court of Appeals would reject <u>Vega</u>[,]" *Georgiou*, 2023 WL 112805, at *4, and, "as recognized in *Vega*, that liquidated damages are the appropriate remedy for violations of § 191." *Day*, 2022 WL 19078129, at *7.

15

A-21

In a letter providing supplemental authority, Defendant presents one additional case that "noted [] concerns regarding the soundness and correctness of *Vega*," and two transcripts from conferences before a federal district judge in which the judge called the penalties under *Vega* "kooky," "insanely out of proportion" and "draconian." Dkt. No. 37 at 6; Dkt. No. 37-1 at 3; Dkt. No. 37-2 at 4.

This evidence is not sufficiently "persuasive evidence" to convince the Court that the New York Court of Appeals would reject *Vega*. *Muhammad*, 595 F.3d at 432. First and foremost, a judge's commentary on a legal issue during a court conference is neither binding nor persuasive. Second, although Defendant is correct that there have been cases disagreeing with *Vega*, those cases are far fewer than the cases agreeing with *Vega*. *See Espinal v. Sephora USA, Inc.*, No. 22-CV-03034, 2022 WL 16973328, *6 (S.D.N.Y. Nov. 16, 2022) ("While we would likely not reach this conclusion ourselves if the issue were presented afresh . . . we feel bound to follow *Vega*'s holding on this point"); *Harris v. Old Navy, LLC*, No. 21-CV-9946, 2022 WL 16941712, *7 (S.D.N.Y. Nov. 15, 2022) (stating the same by the same judge); *Georgiou*, 2023 WL 112805, at *6.

Further, the *Grant* court noted that "th[e] legislative history reveals that Labor Law § 198(1-a) was aimed at remedying *employers' failure to pay the amount of wages required by contract or law*." *Grant*, 2024 WL 172900, at *4 (emphasis added). It explained that "[t]here is no reference in the legislative history of Labor Law § 198 to the frequency or timing of wage payments, and nothing to suggest that the statute was meant to address circumstances in which an employer pays full wages pursuant to an agreed-upon, biweekly pay schedule that nevertheless does not conform to the frequency of payments provision of law." *Id.*

It is true that section 198 does not discuss the frequency of payments. However, section 198 provides a private right of action for "wage claims based upon violations of one or more of the substantive provisions of Labor Law article 6" "[a]nd it is Labor Law § 191 that 'generally regulates payment of wages by employers and creates reciprocal rights of employees.'" *Konkur*, 38 N.Y.3d at 43-44 (quotations omitted). Section 191(1)(a) requires, by law, that employers pay a manual worker "weekly and not later than seven calendar days after the end of the week in which the wages are earned." If that is not done, then the employer "fail[ed]to pay the amount of wages required by contract or law." *Grant*, 2024 WL 172900, at *4. Although § 198(1-a) does not reference "the frequency or timing of wage payments," *id.*, it does reference "underpayment[s]." N.Y. Lab. L. § 198(1-a). Merriam-Webster defines "under" as "in or into a position below or beneath something" or "below some quantity, level, or limit." Merriam-Webster's Dictionary, https://www.merriam-webster.com/dictionary/under (last visited Feb. 26, 2024). If an employee is not paid any money on the date required by law, he or she was paid below the required amount and was, therefore, underpaid.

Of note, *Vega* was decided September 10, 2019, and *Konkur* was decided February 10, 2022. Although *Konkur* concerned Labor Law § 198–b, the Court of Appeals discussed Labor Law article 6, specifically Labor Law § 191, but did not address or overrule *Vega*. The Court of Appeals' silence concerning *Vega* is not conclusive evidence that it will never disagree with *Vega* in the future. However, the Court of Appeals explicitly noted that "[w]here the legislature intended for an article 6 provision to be enforced individually, it expressly provided a private right of action" "[a]nd it is Labor Law § 191 that 'generally regulates payment of wages by employers and creates reciprocal rights of employees.'" *Konkur*, 38 N.Y.3d at 44 (quotations omitted). The Court of Appeals could have discussed *Vega* and its holding of a private right of

action under section 191, but it did not. *Mabe*, 2022 WL 874311, at *6 ("Although the *Konkur* Court held that an employer-required kickback claim under Section 198–b did not qualify as a wage claim under Section 198, it did not address whether the late payment of wages is an underpayment of wages and thus a wage claim privately actionable under NYLL § 198(1-a) as found by *Vega*").

The Second Department's decision in *Grant* provides evidence that causes the Court to take greater pause in answering the question of whether the Court of Appeals would disagree with *Vega*. However, based on the reasoning set forth by the vast majority of Courts to continue to follow *Vega*, even in light of *Konkur*, and the dissent in *Grant*, the Court concludes that the *Grant* majority and the few district court cases questioning *Vega* are not persuasive enough evidence to reject the present coalition of cases upholding *Vega*. The Court predicts that based on the current legal landscape, the New York Court of Appeals would accept *Vega*. Thus, Defendant's motion is denied because a private right of action (either express or implied) has been recognized in the precise circumstances presented in Plaintiff's complaint.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the reasons set forth above, the Court hereby

**ORDERS** that Defendant's motion to dismiss (Dkt. Nos. 14, 15) is **DENIED**; and the Court further

18

A-24

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision

and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: March 14, 2024
       Albany, New York

Mae A. D'Agostino
U.S. District Judge

A-25

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

LORI BAZINETT, *individually and on behalf
of all others similarly situated,*

                                          **Plaintiff,**

        vs.                                                    **1:23-CV-790
                                                               (MAD/ML)**

PREGIS LLC,

                                          **Defendant.**
_____

APPEARANCES:                              OF COUNSEL:

**BURSOR & FISHER P.A.**                  **YITZCHAK KOPEL, ESQ.**
1330 Avenue of the Americas               **ALEC LESLIE, ESQ.**
32nd Floor
New York, New York 10019
Attorneys for Plaintiff

**OGLETREE DEAKINS**                      **ALFONS D'AURIA, ESQ.**
599 Lexington Avenue                      **CAITLIN L. O'FALLON, ESQ.**
Ste 17th Floor                            **ROBERT M. TUCKER, ESQ.**
New York, New York 10022
Attorneys for Defendant

**Mae A. D'Agostino, U.S. District Judge:**

### MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

On April 10, 2023, Plaintiff filed a complaint in the United States District Court for the

Northern District of Illinois alleging violations of New York Labor Law ("N.Y. Lab. L.") for

Defendant's failure to timely pay wages. *See* Dkt. No. 1. The parties moved to transfer the case

to this Court, *see* Dkt. No. 19, which the Northern District of Illinois granted. *See* Dkt. No. 22.

The case was transferred to this Court on June 27, 2023. *See* Dkt. No. 23.

1

Previously, on June 5, 2023, Defendant moved to dismiss Plaintiff's complaint for lack of standing and failure to state a claim. *See* Dkt. Nos. 14, 15. Plaintiff responded in opposition, *see* Dkt. No. 28, and Defendant replied. *See* Dkt. No. 31. Plaintiff subsequently submitted six notices of supplemental authority. *See* Dkt. Nos. 32, 33, 34, 35, 36, 38. Defendant submitted one notice of supplemental authority. *See* Dkt. No. 37. On March 14, 2024, the Court denied Defendant's motion to dismiss. *See* Dkt. No. 42.

Presently before the Court is Defendant's motion to amend the Court's March 14, 2024, Memorandum-Decision and Order to certify it for immediate interlocutory appeal. *See* Dkt. No. 44. Plaintiff responds in opposition. *See* Dkt. No. 53. Plaintiff has submitted eight notices of supplemental authority. *See* Dkt. Nos. 55, 64, 65, 69, 71, 74, 75, 77. Defendant has submitted one such notice. *See* Dkt. No. 70.

For the following reasons, Defendant's motion to certify this Court's March 14, 2024, Memorandum-Decision and Order for immediate interlocutory appeal is granted.

## II. DISCUSSION[1]

### A. Legal Standard

Federal appellate jurisdiction is generally limited to review of "final decisions of the district courts." 28 U.S.C. § 1291. "This final-judgment rule . . . preserves the proper balance between trial and appellate courts, minimizes the harassment and delay that would result from repeated interlocutory appeals, and promotes the efficient administration of justice." *Microsoft Corp. v. Baker*, 582 U.S. 23, 36-37 (2017) (citing *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 374 (1981)); *see also Nat'l Asbestos Workers Med. Fund v. Philip Morris, Inc.*, 71 F. Supp. 2d 139, 149 (E.D.N.Y. 1999) (observing that the final-judgment rule preserves, *inter alia*,

---

[1] The Court assumes the parties' familiarity with the underlying facts of the case.

2

"the distinct and vital role of the trial judge in the federal system").  It also evidences Congress'

"preference that some erroneous trial court rulings go uncorrected until the appeal of a final

judgment, rather than having litigation punctuated by piecemeal appellate review of trial court

decisions which do not terminate the litigation." *Fischer v. N.Y. State Dep't of Law*, 812 F.3d

268, 273 (2d Cir. 2016) (quoting *United States v. Hollywood Motor Car Co.*, 458 U.S. 263, 265

(1982)) (additional quotation marks omitted).  However, § 1292(b) vests a district court with

discretion to certify an order in a civil action for immediate appeal if (1) it "involves a controlling

question of law," (2) "as to which there is substantial ground for difference of opinion," and (3)

"an immediate appeal from the order may materially advance the ultimate termination of the

litigation."  28 U.S.C. § 1292(b).

   "[T]he proponents of an interlocutory appeal have the burden of showing that all three of

the substantive criteria are met." *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 986 F. Supp.

2d 524, 529 (S.D.N.Y. 2014) (citation omitted).  However, "[e]ven where the three legislative

criteria of [§] 1292(b) appear to be met, district courts retain 'unfettered discretion to deny

certification' if other factors counsel against it." *Id.* at 530 (quoting *Transp. Workers Union of

Am., Local 100, AFL-CIO v. N.Y. City Transit Auth.*, 358 F. Supp. 2d 347, 351 (S.D.N.Y. 2005));

*see also United States ex rel. Quartararo v. Cath. Health Sys. of Long Island Inc.*, 521 F. Supp.

3d 265, 273 (E.D.N.Y. 2021) (quotation marks and quotations omitted) ("Because [i]nterlocutory

appeals are presumptively disfavored, . . . district courts have broad discretion to deny

certification even where the statutory criteria are met").  "Section 1292(b) was not intended 'to

open the floodgates to a vast number of appeals from interlocutory orders in ordinary litigation' . .

. or to be a 'vehicle to provide early review of difficult rulings in hard cases.'" *Primavera

Familienstifung v. Askin*, 139 F. Supp. 2d 567, 570 (S.D.N.Y. 2001) (quotations omitted).  Rather,

"[c]ertification is only warranted in 'exceptional cases,' where early appellate review 'might avoid protracted and expensive litigation.'" *Id.* (quotation omitted).

Defendant seeks to have the Court's March 14, 2024, decision certified for immediate interlocutory appeal to answer the following question: "does Section 191 of the New York Labor Law provide a private right of action when an employee is paid in full, but one week late?" Dkt. No. 44-1 at 6.

### 1. Substantial Ground for Difference of Opinion[2]

To certify a question for immediate appeal, § 1292(b) requires there to be a "substantial ground for difference of opinion." 28 U.S.C. § 1292(b). A substantial ground for difference of opinion exists "when '(1) there is conflicting authority on the issue, or (2) the issue is particularly difficult and of first impression for the Second Circuit.'" *Capitol Recs., LLC v. Vimeo, LLC*, 972 F. Supp. 2d 537, 551 (S.D.N.Y. 2013) (quoting *In re Enron Corp.*, No. 06-CV-7828, 2007 WL 2780394, *1 (S.D.N.Y. Sept. 24, 2007)). "'The mere presence of a disputed issue that is a question of first impression, standing alone, is insufficient to demonstrate a substantial ground for difference of opinion.'" *Id.* (quoting *In re Flor*, 79 F.3d 281, 284 (2d Cir. 1996)). Instead, "'[i]t is the duty of the district judge . . . to analyze the strength of the arguments in opposition to the

---

[2] Plaintiff does not dispute that the issue raised in this case involves a controlling question of law. *See generally* Dkt. No. 53. "[I]t is clear that a question of law is 'controlling' if reversal of the district court's order would terminate the action." *Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in Amministrazione Straordinaria*, 921 F.2d 21, 24 (2d Cir. 1990) (citation omitted). Here, if this Court's decision was reversed, it would terminate the action because Plaintiff would not have a private right of action to move for the relief she currently seeks. Therefore, this issue involves a controlling question of law that warrants certification. *Cf. Brennan-Centrella v. Ritz-Craft Corp. of Pennsylvania*, 942 F.3d 106, 113 (2d Cir. 2019) (certifying a question to the Vermont Supreme Court because "the question before us presents an issue of state law, there is no clear and controlling Vermont precedent on the question, and the answer to the question will determine whether the Centrellas are entitled to prejudgment interest in this case").

challenged ruling when deciding whether the issue of appeal is truly one on which there is a *substantial* ground for dispute.'" *In re Flor*, 79 F.3d at 284 (quoting *Max Daetwyler Corp. v. Meyer*, 575 F. Supp. 280, 283 (E.D. Pa. 1983)). For there to be a substantial ground for a difference of opinion, "there must be 'substantial doubt' that the district court's order was correct." *Estevez-Yalcin v. The Children's Village*, No. 01-CV-8784, 2006 WL 3420833, *4 (S.D.N.Y. Nov. 27, 2006) (quotations and additional quotation marks omitted).

Whether section 191 of the New York Labor Law provides a private right of action when an employee is paid in full, but one week late, has been answered in the affirmative and the negative. "In *Vega v. CM & Associates Construction Management, LLC*, . . . in which the plaintiff was paid biweekly, the Appellate Division, First Department, found the combination of Section 191 and Section 198 provides an express and implied private right of action to prosecute late payments violative of Section 191." *Zachary v. BG Retail, LLC*, 716 F. Supp. 3d 339, 347 (S.D.N.Y. 2024) (citing *Vega v. CM & Assocs. Constr. Mgmt., LLC*, 175 A.D.3d 1144, 1146-47 (1st Dep't 2019)). "The Appellate Division, Second Department, [] reached the opposite conclusion in *Grant v. Global Aircraft Dispatch, Inc.*, . . . holding neither an express nor implied private right of action existed for employees to sue for violations of Section 191." *Id.* at 348 (citing *Grant v. Glob. Aircraft Dispatch, Inc.*, 223 A.D.3d 712, 715 (2d Dep't 2024)).

As demonstrated in this Court's March 14, 2024, decision, and the parties' filings of supplemental authority, the two conflicting Appellate Division decisions have created a substantial ground for difference of opinion. "Since the decision in *Grant*, most federal courts in the Second Circuit that have addressed this question have concluded that the Court of Appeals would likely agree with *Vega* and conclude a private right of action exists." *Aguilar v. Calexico Cinco LLC*, No. 22-CV-6345, 2024 WL 3837669, *9 (E.D.N.Y. June 28, 2024); *see also*

*Birthwright v. Advance Stores Co., Inc.*, No. 22-CV-593, 2024 WL 3202973, *1 (E.D.N.Y. June 27, 2024) (collecting cases); *Espinal v. Sephora USA, Inc.*, No. 22-CV-3034, 2024 WL 4241537, *1 (S.D.N.Y. Sept. 19, 2024); *but see Galante v. Watermark Servs. IV, LLC*, No. 23-CV-6227, 2024 WL 989704, *10 (W.D.N.Y. Mar. 7, 2024) ("In light of the text, purpose, and history of the statute, the Court concludes that the Second Department's decision in *Grant* better reflects how the New York Court of Appeals would decide this issue"); *Espinal v. Sephora USA, Inc.*, No. 22-CV-03034, 2024 WL 3589604, *11 (S.D.N.Y. July 31, 2024) (issuing a Report and Recommendation predicting that the Court of Appeals would follow *Grant*, which was rejected by the district judge).

Plaintiff argues that because most federal district courts that have addressed this issue side with *Vega*, then there is no substantial ground for difference of opinion. *See* Dkt. No. 53 at 7-9.

There is no bright line rule as to how many courts must disagree to establish a substantial ground for difference of opinion. However, "[c]ertification is to be reserved for the exceptional case in which the law is fundamentally uncertain." *Transp. Workers Union of Am., Loc. 100, AFL-CIO*, 358 F. Supp. 2d at 354. Courts have found this circumstance to be met where (1) there is a split in authority between only two appellate divisions, *see Benoit v. Saint-Gobain Performance Plastics Corp.*, 959 F.3d 491, 506 (2d Cir. 2020) (concluding that "there is ample ground for difference of opinion"); (2) the majority of courts within the Second Circuit have ruled one way, with few courts concluding otherwise, *see Mei Xing Yu v. Hasaki Rest., Inc.*, 874 F.3d 94, 98 (2d Cir. 2017) (concluding that there was substantial ground for difference of opinion demonstrated by "the differing rulings within this Circuit"); and (3) one unpublished Second Circuit decision came to a contrary conclusion compared to all other cases from the Second Circuit, federal district courts, and New York courts, *Zakrzewska v. New Sch.*, 574 F.3d 24, 27

(2d Cir. 2009) (granting a motion for interlocutory appeal based on the district court's statement that its "conclusion is not free from doubt").

These Second Circuit cases demonstrate that although most federal district courts have concluded that the Court of Appeals would likely agree with *Vega* over *Grant*, that does not automatically negate the existence of a substantial ground for difference of opinion. *But see Compania Sudamericana de Vapores S.A. v. Sinochem Tianjin*, No. 06-CV-13765, 2007 WL 1002265, *5 (S.D.N.Y. Apr.4, 2007) ("[Defendant's] argument that a "substantial' ground for difference of opinion' exists is belied by the fact that only one district court opinion . . . supports its position").

As Defendant posits, the divide among courts on this issue is likely to continue to grow, demonstrated by this Court's own decision wherein it chose to follow the Southern District of New York's decision in *Zachary v. BG Retail, LLC*, 716 F. Supp. 3d 339, 350 (S.D.N.Y. 2024) over the Western District of New York's decision in *Galante v. Watermark Servs. IV, LLC*, No. 23-CV-6227, 2024 WL 989704 (W.D.N.Y. Mar. 7, 2024). *See* Dkt. No. 44-1 at 15 (citing Dkt. No. 42 at 13). The Court did so in the context of "'undertak[ing] the imprecise but necessary task of predicting on a reasonable basis how the New York Court of Appeals would rule.'" Dkt. No. 42 at 10 (quoting *DiBella v. Hopkins*, 403 F.3d 102, 112-13 (2d Cir. 2005)). The Court agrees with Defendant that "[a]bsent clear direction from the Court of Appeals, . . . [t]omorrow or next week, another District Court could issue a decision following *Galante* over *Zachary*, based on its own undertaking of the 'imprecise but necessary task of predicting' how the New York Court of Appeals will rule on this issue, and so on." Dkt. No. 44-1 at 15-16.

This view is supported by district court opinions that have accepted *Vega* as the route the Court of Appeals would likely follow but acknowledged their "doubts about the viability of

*Vega*." Dkt. No. 41 at 15 (quoting *Georgiou v. Harmon Stores, Inc.*, No. 2:22-CV-02861, 2023 WL 112805, *4 (E.D.N.Y. Jan. 5, 2023)); *see also Day v. Tractor Supply Co.*, No. 22-CV-489, 2022 WL 19078129, *6 (W.D.N.Y 2022); *Espinal v. Sephora USA, Inc.*, No. 22-CV-03034, 2022 WL 16973328, *6 (S.D.N.Y. Nov. 16, 2022) ("While we would likely not reach this conclusion ourselves if the issue were presented afresh . . . we feel bound to follow *Vega*'s holding on this point").

On September 17, 2024, Chief Judge Brenda K. Sannes denied the defendants' motion for an interlocutory appeal concerning the precise question at issue in this case. *See Covington v. Childtime Childcare, Inc., et al.*, No. 1:23-CV-710, Dkt. No. 58. Chief Judge Sannes concluded that the "'exceptional circumstances'" necessary to warrant certification "are not present here because the second requirement for certification is not met, as there is no 'substantial ground for difference of opinion[.]'" *Id.* at 4 (quotations omitted). "The Court disagree[d] that *Galante* and *Grant* are sufficient to create a 'substantial' difference of opinion in light of the overwhelming authority that sides with *Vega*." *Id.* at 6 (citation omitted).

Chief Judge Sannes acknowledged that one court in the Eastern District of New York recently certified the precise question at issue for interlocutory appeal. *See id.* (citing *Birthwright v. Advance Stores Co., Inc.*, No. 22-CV-593, Dkt. No. 72 (E.D.N.Y. July 24, 2024)).[3],[4] However, she also explained that "at least two other courts, post-*Grant*, have denied motions for certification for interlocutory appeal on the question of whether there exists a private right of

---

[3] The Eastern District of New York's grant of a certificate for interlocutory appeal negates Plaintiff's argument that courts have "unanimously" rejected similar requests. *See* Dkt. No. 53 at 10. However, Plaintiff's memorandum of law was filed on April 29, 2024, prior to the Eastern District of New York's decision. Therefore, Plaintiff's argument was accurate at the time it was filed.

[4] The Second Circuit has not yet ruled on the petition for leave to appeal. *See Advance Stores Company, Inc. v. Birthwright*, No. 24-2111.

8

action for an alleged violation of [New York Labor Law section] 191 because the court found there was no substantial difference of opinion." *Id.* at 7 (citing *Levy v. Endeavor Air Inc.*, No. 1:21-CV-4387, 2024 WL 1422322, *2 (E.D.N.Y. Mar. 29, 2024) *and Zachary v. BG Retail, LLC*, No. 22-CV-10521 (S.D.N.Y.), Dkt. No. 47).

The Court agrees with Chief Judge Sannes that "'the weight of authority leans almost unanimously in favor in favor of the existence of a private right of action under [New York Labor Law section] 191.'" *Id.* at 8 (quoting *Levy*, 2024 WL 1422322, at *2). However, because there are Second Circuit cases that have affirmed certification of an interlocutory appeal under circumstances where a "conclusion is not free from doubt," *Zakrzewska*, 574 F.3d at 27, and because there are federal district courts that have either disagreed with *Vega* or identified their "doubts" about its application, the Court concludes that there is a substantial ground for difference of opinion.

The Court is mindful that "the mere presence of a disputed issue that is a question of first impression, standing alone, is insufficient to demonstrate a substantial ground for difference of opinion." *In re Flor*, 79 F.3d at 284. Instead, "[i]t is the duty of the district judge . . . to analyze the strength of the arguments in opposition to the challenged ruling when deciding whether the issue for appeal is truly one on which there is a substantial ground for dispute." *Id.* The question at issue is a question of first impression for the Second Circuit, and the Second Department's explanation in *Grant* is a reasonable interpretation of New York Labor Law section 191.

First, it is evident that there is no express private cause of action provided in the text of section 191. *See* N.Y. Lab. L. § 191. Rather, courts must look to a separate provision of New York Labor Law to find an enforcement provision for a private right of action—section 198. As explained in *Grant*, there are circumstances "where an employer uses a regular biweekly pay

9

schedule, that employer's payment of wages is due, under the employment agreement between the employer and an employee, every two weeks." *Grant*, 223 A.D.3d at 716. "Such an agreed-upon pay schedule between an employer and a manual worker violates the frequency of payments requirement." *Id.* The *Grant* court concluded that such an agreement between and employer and employee "is not equivalent, in [its] view, with a nonpayment or underpayment of wages subject to collection with an additional assessment of liquidated damages." *Id.* A court in the Southern District of New York has noted that *Grant*'s conclusion "without reference to the [Fair Labor Standards Act's ("FLSA")] parallel provision, . . . would have some force[.] As the competing textual analyses in *Vega* and *Grant* reflect, the frequency-of-payments provision is less than ideally clear. Its textual ambiguity invites reasonable arguments on both sides of the ledger." *Espinal*, 2024 WL 4241537, at *4.

However, the New York Labor Law was drafted to conform with the FLSA. *See id.* (citing, *inter alia*, N.Y. Spons. Memo., 2009 A.B. 6963, Leg. 232, Reg. Sess. (April 8, 2009)), Nevertheless, the *Grant* court, the *Galante* court, and a few other federal district courts have explicitly disagreed or questioned whether New York Labor Law provides for a private cause of action where an employer pays an employee their entire wages, but one week late. The Court finds that this difference in opinions is substantial enough to warrant the Second Circuit weighing in and certifying the issue to the New York Court of Appeals. *See Benoit*, 959 F.3d at 506-08 (concluding that "there is ample ground for difference of opinion" where the diverging case law is "based on an interpretation of [a New York Court of Appeals case] that may or may not be correct").

10

A-35

### 2. *Advance Termination of Litigation*

The Court must next decide whether certifying the present issue for interlocutory appeal would "materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). The Court concludes that it would. "Although advancement of the litigation is the third of the statutory criteria, '[c]ourts place particular weight on . . . whether immediate appeal will materially advance the ultimate termination of the litigation.'" *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 986 F. Supp. 2d 428, 476 (S.D.N.Y. 2013) (quoting *Transp. Workers Union of Am., Local 100*, 358 F. Supp. 2d at 350).

In this case, if the Second Circuit or Court of Appeals conclude that section 191 does not provide for a private cause of action, this case would be terminated. *See In re Methyl Tertiary Butyl Ether ("MTBE") Prod. Liab. Litig.*, No. 1:00-1898, 2008 WL 2511038, *5 & n.31 (S.D.N.Y. June 18, 2008) (collecting cases). Discovery in this case is not complete, it is not scheduled to be completed until May 1, 2025, and no summary judgment motions have been filed. *See* Dkt. No. 61 at 2. If the courts determine that a private right of action does exist, then this case could likely be earlier resolved by limiting the issues necessary to be determined at the summary judgment stage or trial. *See Moses v. Westchester Cnty. Dep't of Correction*, No. 10-CV-9468, 2014 WL 13116056, *4 (S.D.N.Y. Mar. 31, 2014) ("An immediate appeal is considered to advance the ultimate termination of the litigation if that appeal promises to advance the time for trial or to shorten the time required for trial") (quotations and quotation marks omitted); *Mullins v. City of New York*, No. 04-CV-2979, 2008 WL 118369, *2 (S.D.N.Y. Jan. 10, 2008) ("[I]f the Court of Appeals reverses this Court . . . the litigation will end. . . . [I]f the Court of Appeals holds that the DOL's revised regulations mandate that police sergeants are entitled to overtime compensation as non-exempt employees . . . then there will no longer be any need for

11

A-36

the parties to complete discovery [on additional issues] . . . . Any motions regarding the remaining groups of test plaintiffs that are anticipated by the parties would also be rendered moot by such a holding").

Plaintiff argues that certification would not advance this litigation because the Court "would have to wait for the Second Circuit to permit an interlocutory appeal to be taken . . . . So first they would have to permit it to proceed. Secondly, they would have to certify the question to the New York Court of Appeals. And thirdly, the Court of Appeals would have to decide the question." Dkt. No. 53 at 12 (quoting *Zachary*, No. 7:22-CV-10521, Dkt. No. 47 at 8). Plaintiff asks the Court to agree with the district court in *Zachary* that proceeding through "these three lawyers of review . . . would take a long time . . . ." *Id.* (quotation omitted).

The Court agrees that the process will likely take time. However, this issue is better suited to be resolved by the Second Circuit, secondary to the New York Court of Appeals. Either the litigation pends in this Court as the parties proceed through discovery, motion practice, and trial, or the litigation pends in the Second Circuit and Court of Appeals. In either circumstance, litigation on this issue will not end any time soon (absent mediation or settlement), and the Second Circuit or Court of Appeals' answer on the matter will expedite this Court's resolution of the case. Section 1292(b) does not state that an immediate appeal "will" or "must" "materially advance the ultimate termination of the litigation," but only that certification "may" materially advance the litigation. 28 U.S.C. § 1292. As such and for the reasons outlined herein, the Court concludes that an immediate appeal in this case may advance termination of this litigation such that Defendant's motion for certification of an interlocutory appeal is granted.[5]

---

[5] Plaintiff is correct that whether certification would materially advance litigation in other cases is not one of the three factors set forth under 28 U.S.C. § 1292(b). *See* Dkt. No. 53 at 13. However, the Second Circuit has stated that "in exercising our discretion under the statute, we may properly

### 3. Stay of Proceedings

Defendant requests that the Court stay this case pending resolution of its interlocutory appeal. *See* Dkt. No. 44-1 at 16-18. "Neither the application for nor the granting of an appeal under [§ 1292] shall stay proceedings . . . unless a stay is ordered by a judge . . . ." 28 U.S.C. § 1292(d)(3). "The factors relevant to granting a stay pending appeal are the applicant's 'strong showing that he is likely to succeed on the merits,' irreparable injury to the applicant in the absence of a stay, substantial injury to the nonmoving party if a stay is issued, and the public interest." *Uniformed Fire Officers Ass'n v. de Blasio*, 973 F.3d 41, 48 (2d Cir. 2020) (quoting *Nken v. Holder*, 556 U.S. 418, 434 (2009)). "The first two factors are the most critical, but a stay 'is not a matter of right, even if irreparable injury might otherwise result,' it is 'an exercise of judicial discretion,' and '[t]he party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion.'" *Id.* (quotation omitted).

Defendant argues that it "has raised 'serious questions' regarding the Court's conclusions that Plaintiff has stated a claim for untimely wages under [New York Labor Law] Section 191. [It] would be irreparably harmed by the continuation of the case pending appeal, as discovery, further motions practice, and possibly a trial would require the potential expenditure of time and resources." *Id.* at 17. Defendant also contends that Plaintiff will not be substantially injured because although there will be a delay in the case, "the delay will be 'less than overwhelming and

---

consider the system-wide costs and benefits of allowing the appeal. In other words, the impact that an appeal will have on other cases is a factor that we may take into account in deciding whether to accept an appeal that has been properly certified by the district court." *Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in Amministrazione Straordinaria*, 921 F.2d 21, 24 (2d Cir. 1990). As identified in this Court's March decision and this decision, there are myriad cases across the Second Circuit addressing the issue underlying this case. Certification would likely advance litigation in all of those cases, particularly if the Second Circuit or Court of Appeals were to hold that no private right of action exists under section 191.

13

fully reparable' in comparison to allowing this case to proceed under the circumstances where the Court's jurisdiction to entertain this matter is in doubt." *Id.* (quotation omitted). Finally, Defendant argues the public interest would be served by a stay because it would be a waste of time to proceed to trial if the appellate courts nullify this Court's decision and the public would benefit from resolution of the question to know whether they have a private right of action under section 191. *See id.* at 18.

Plaintiff argues that "litigation costs do not rise to the level of irreparable injury," and "Plaintiff and the putative Class will suffer harm if a stay is issued" because their potential recovery will be delayed by years. Dkt. No. 53 at 16-17. Plaintiff does not address the likelihood of success on appeal or public interest factors. *See id.*

Plaintiff is correct that "stays in the New York Labor Law [section] 191 context have been routinely denied . . . ." *Id.* at 17 (collecting cases). However, none of the cases cited by Plaintiff granted a request to certify the issue for interlocutory appeal. *See id.* (citing *Elhassa v. Hallmark Aviation Servs., L.P.*, No. 21-CV-9768, 2022 WL 563264 (S.D.N.Y. Feb. 24, 2022); *Rankine v. Levi Strauss & Co.*, 674 F. Supp. 3d 57 (S.D.N.Y. 2023); *Krawitz v. Five Below, Inc.*, No. 22-CV-2253, 2024 WL 308276 (E.D.N.Y. Jan. 25, 2024); *Confusione v. Autozoners, LLC*, No. 21-CV-00001, 2022 WL 17585879 (E.D.N.Y. Dec. 12, 2022); *Jones v. Nike Retail Servs., Inc.*, No. 22-CV-3343, 2022 WL 4007056 (E.D.N.Y. Aug. 30, 2022).

Additionally, as explained by a judge in the Southern District of New York, and reiterated by Chief Judge Sannes, numerous federal district courts have declined to stay their cases pending a decision by the Court of Appeals in *Grant* because "any decision by the Court of Appeals is far off, and it [is] not even certain that there will be one. A motion for reargument and leave to appeal remains pending before the Second Department . . . .'" *Covington*, No. 1:23-CV-710, Dkt.

14

No. 58 at 8 n.5 (quoting *Bryant v. Buffalo Exch., Ltd.*, No. 23-CV-8286, 2024 WL 3675948, *6 (S.D.N.Y. Aug. 6, 2024)).  The Court's conclusion might follow these cases if it were declining Defendant's motion to certify an interlocutory appeal.

The question of whether to grant a stay pending appeal "contemplates that a movant may be granted relief even if it demonstrates something less than a likelihood of success on the merits of its appeal.  Thus, if it shows 'serious questions' going to the merits of its appeal as well as irreparable harm, the stay may be granted if the balance of hardships 'tips decidedly' in favor of the moving party." *Sutherland v. Ernst & Young LLP*, 856 F. Supp. 2d 638, 640 (S.D.N.Y. 2012) (citing *Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 34-38 (2d Cir. 2010)).  "Similarly, the stronger the showing that the movant makes as to its likelihood of success on the merits, the less compelling need be the movant's demonstration of harm." *Id.* (citing *Mohammed v. Reno*, 309 F.3d 95, 101 (2d Cir. 2002) ("The probability of success that must be demonstrated is inversely proportional to the amount of irreparable injury plaintiff[ ] will suffer absent the stay").  Nonetheless, the movant cannot prevail by showing a mere possibility of success or of harm.

As explained in this Court's discussion of whether there is a substantial ground for difference of opinion, there is a serious question going to the merits of Defendant's interlocutory appeal.  Plaintiff does not argue otherwise.  *See generally* Dkt. No. 53.  Defendant has also demonstrated sufficient harm to warrant a stay.

Courts have concluded that "'litigation costs do not rise to the level of irreparable injury.'" *McDonald's Corp. v. Vanderbilt Atl. Holdings LLC*, No. 19-CV-06471, 2021 WL 1784315, *6 (E.D.N.Y. May 5, 2021) (quoting *Lucy v. Bay Area Credit Svc LLC*, 2011 WL 13344167, *2 (D. Conn. July 28, 2011)); *see also* Dkt. No. 53 at 16.  However, courts have concluded as such

15

largely in the context of "[w]hen a party appeals an order denying its motion to compel arbitration, [and] the party faces ongoing litigation costs while its appeal is pending," *id.* ("[N]o matter what the outcome of the appeal is—whether [the] case is heard by a federal judge or an arbitrator—the parties will need to conduct discovery to ensure an informed resolution to the case") (quotation omitted), or from an order certifying a class under Rule 23 and conditionally certifying an FLSA collective action. *See Glatt v. Fox Searchlight Pictures Inc.*, No. 11-CV-6784, 2013 WL 5405696, *1, *4 (S.D.N.Y. Sept. 17, 2013); *Strougo v. Barclays PLC*, 194 F. Supp. 3d 230, 231 (S.D.N.Y. 2016); *Daniels v. City of New York*, 138 F. Supp. 2d 562, 563 (S.D.N.Y. 2001).

Contrary to Plaintiff's contention, Defendant does not rely solely on the potential "burden . . . from simply having to take part in discovery." Dkt. No. 53 at 16. Defendant argues that it would be irreparably harm by continuing discovery, motion practice, and trial. *See* Dkt. No. 44-1 at 17. A stay may be appropriate where the interlocutory appeal would potentially moot district court proceedings. *See In re Dynex Cap., Inc. Sec. Litig.*, No. 05-CV-1897, 2006 WL 1517580, *3 (S.D.N.Y. June 2, 2006) ("My denial of [the] motion to dismiss turned on this question, and substantial resources may be expended in vain both by the parties and this Court if my initial conclusion proves incorrect. . . . If defendants make an application to the Court of Appeals within the 10 days allowed therefore, this matter will be stayed pending resolution of the appeal"); *Ferring B.V. v. Allergan, Inc.*, 343 F. Supp. 3d 284, 291 (S.D.N.Y. 2018) ("Continuation of trial at this stage, with a case-dispositive issue pending on appeal, would drain parties' resources and the Court's. If on appeal the Federal Circuit reverses this Court's Standing Opinion, trial will have been a nullity, irreparably harming both parties"); *see also Dev. Specialists, Inc. v. Akin Gump Strauss Hauer & Feld LLP*, No. 11-CV-5968, 2012 WL 2952929, *10 (S.D.N.Y. July 18, 2012)

(staying proceedings after certifying an issue for interlocutory appeal without conducting any analysis on stay factors).

It is true that a stay "would delay any relief that is coming to Defendant's employees," likely "by multiple years." Dkt. No. 53 at 16-17 (quoting *Elhassa*, 2022 WL 563264, at *2 ("If the complaint's allegations are to be credited, the Plaintiff is a manual worker who received pay late. There is an interest in moving the case forward")). However, in *Elhassa*, the district court had not yet ruled on the defendant's motion to dismiss, there were not yet any district courts who had sided with *Grant* over *Vega*, and the district court had not certified an interlocutory appeal. *See Elhassa*, 2022 WL 563264, at *2. Plaintiff does not explain how she or the putative class would suffer any greater harm if a stay was issued now, as compared to potential harm in proceeding through discovery, dispositive motion practice, and trial, followed by any potential appeal. In either circumstance, plaintiff and the putative class would not recover any potential relief for a few years.

Finally, the public interest strongly weighs in favor of a stay. It is in everyone's best interest for there to be a controlling decision from the New York Court of Appeals as to whether employee's have a private right of action under section 191 for the late payment of wages. *See Ferring B.V. v. Allergan, Inc.*, 343 F. Supp. 3d 284, 292 (S.D.N.Y. 2018) ("It would be a waste of resources—the parties', the Court's, and the public's—to proceed to a trial that turns out to be a nullity"). Therefore, after considering all of the relevant factors, the Court grants Defendant's request for a stay pending appeal. However, if the Second Circuit declines to accept this interlocutory appeal, the case will resume with discovery.

A-42

**IV. CONCLUSION**

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the reasons set forth above, the Court hereby

**ORDERS** that Defendant's motion to certify (Dkt. No. 44) is **GRANTED**; and the Court further

**ORDERS** that Defendant shall have **fourteen (14) days** from the date of this Memorandum-Decision and Order to move the Second Circuit to accept the appeal; and the Court further

**ORDERS** that Defendant's request to stay this case pending the Second Circuit's declination to accept the appeal or resolution of the interlocutory appeal is **GRANTED**; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: October 24, 2024
         Albany, New York

Mae A. D'Agostino
U.S. District Judge

18

A-43

| STATE OF NEW YORK | ) | | **AFFIDAVIT OF SERVICE** |
|---|---|---|---|
| | ) | ss.: | **BY E-MAIL** |
| COUNTY OF NEW YORK | ) | | |

       I, Tyrone Heath, 2179 Washington Avenue, Apt. 19, Bronx, New York 10457, being duly sworn, depose and say that deponent is not a party to the action, is over 18 years of age and resides at the address shown above:

**On November 4, 2024**

deponent served the within: **APPENDIX TO PETITION FOR PERMISSION TO APPEAL PURSUANT TO 28 U.S.C. § 1292(b) AND FRAP 5(a)(3)**

**upon:**

> **Yitzchak Kopel, Esq.**
> **Alec M. Leslie, Esq.**
> **BURSOR & FISHER, PA**
> **1330 Avenue of the Americas, 32nd Floor**
> **New York, NY 10019**
> **ykopel@bursor.com**
> **aleslie@bursor.com**

via email at the email addresses shown by consent of all parties. The party(s) waive service of any hard copies.

**Sworn to before me on November 4, 2024**

**/s/ Mariana Braylovskiy**
    **Mariana Braylovskiy**
    Notary Public State of New York
    No. 01BR6004935
    Qualified in Richmond County
  Commission Expires March 30, 2026

**Tyrone Heath**

**Job #   334093**