# 24-2891-CV

## United States Court of Appeals

### FOR THE SECOND CIRCUIT

LORI BAZINETT, individually and on behalf of all others similarly situated,

*Plaintiff-Respondent,*

– v. –

PREGIS LLC,

*Defendant-Petitioner.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

**ANSWER IN OPPOSITION TO PETITION FOR PERMISSION TO
APPEAL AN ORDER OF THE UNITED STATES DISTRICT COURT
PURSUANT TO 28 U.S.C. § 1292(b) AND FRAP 5(A)(3)**

Yitzchak Kopel
**BURSOR & FISHER, P.A.**
1330 Avenue of the Americas
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
E-Mail: ykopel@bursor.com

*Attorney for Plaintiff-Respondent*

# **TABLE OF CONTENTS**

**PAGE(S)**

PRELIMINARY STATEMENT ...............................................................1

FACTUAL BACKGROUND ...................................................................3

PROCEDURAL BACKGROUND OF *VEGA*, *GRANT*, AND *BAZINETT*.............4

ARGUMENT ........................................................................................6

I.     LEAVE TO APPEAL SHOULD BE DENIED .................................6

     A.     Petitioner's "Question Presented" Is Improper ...................6

     B.     There Is No Substantial Ground For Difference Of Opinion ..............7

     C.     The Appeal Will Not Materially Advance The Ultimate Termination Of The Litigation And Certification To The NYCOA Would Be Futile .................................................10

CONCLUSION ....................................................................................13

CERTIFICATE OF COMPLIANCE .......................................................14

# <u>TABLE OF AUTHORITIES</u>

**PAGE(S)**

**CASES**

*Bazinett v. Pregis LLC*,
    720 F. Supp. 3d 154 (N.D.N.Y. 2024) .................................................5

*Bryant v. Buffalo Exchange, LTD.*,
    2024 WL 3675948 (S.D.N.Y. Aug. 6, 2024) ....................................1, 2

*Coopers & Lybrand v. Livesay*,
    437 U.S. 463 (1978) ....................................................................6

*Covington v. Childtime Childcare, Inc.*,
    2024 WL 2923702 (N.D.N.Y. June 10, 2024) ............................ 2, 8, 9

*Espinal v. Sephora USA, Inc.*,
    2024 WL 4751279 (S.D.N.Y. Nov. 12, 2024) ......................... 2, 9, 11

*Grant v. Global Aircraft Dispatch, Inc.*,
    204 N.Y.S.3d 117 (N.Y. App. Div. 2024)...................................... Passim

*Hart v. Ricks Cabaret Int'l, Inc.*,
    73 F. Supp. 3d 382 (S.D.N.Y. 2014) ....................................................7

*Hermes Int'l v. Rothschild*,
    590 F. Supp. 3d 647 (S.D.N.Y. 2022) ....................................................8

*Kidney v. Kalmar Labs., Inc.*,
    808 F.2d 955 (2d Cir.1987) ................................................................13

*Kornstein, Veisz & Wexler*,
    159 F.3d 1346 (2d Cir. 1998) ..............................................................10

*Levy v. Endeavor Air Inc.*,
    2024 WL 1422322 (E.D.N.Y. Mar. 29, 2024) ..................................2, 9

*McDougald v. Garber*,
    132 Misc.2d 457, 504 N.Y.S.2d 383 ..................................................12

*Murray v. UBS Securities, LLC*,
    2014 WL 1316472 (S.D.N.Y. Apr. 1, 2024)........................................12

*Pineiro v. Pension Benefit Guar. Corp.*,
   22 F. App'x 47 (2d Cir. 2001) ..................................................................6

*Rufino v. United States*,
   69 N.Y.2d 310, 506 N.E.2d 910 (1987) ......................................... 3, 13

*Swint v. Chambers Cnty. Com'n*,
   514 U.S. 35 (1995) .................................................................................6

*Vega v. CM & Associates Construction Management, LLC*,
   107 N.Y.S.3d 286 (N.Y. App. Div. 2019).................................... Passim

*Westwood Pharms., Inc. v. Nat'l Fuel Gas Distrib. Corp.*,
   964 F.2d 85 (2d Cir. 1992) ...................................................................12

**STATUTES**

28 U.S.C. § 1292(b) ....................................................................... 6, 9, 11

New York Labor Law ("NYLL") § 191 ............................................ passim

New York Labor Law ("NYLL") § 198 .............................................4, 5

## PRELIMINARY STATEMENT

Petitioner's request must be denied as the validity of the timely pay requirements of New York Labor Law ("NYLL") § 191 is simply not in dispute within this Circuit. Quite the opposite, courts within this Circuit have overwhelmingly declined to follow the outlier Appellate Division, Second Department opinion lauded by the Petitioner. Nearly all district courts have continued to rule this way *after* the authority relied upon by the Petitioner.

Despite this, Petitioner asks the Court to sympathize with the alleged hardships faced by a multimillion-dollar company, over Respondent, a low-wage worker. Despite Petitioner's theatrics, courts can, and should, hold employers accountable for unlawful delays in paying hourly, manual workers. *See Bryant v. Buffalo Exchange, LTD.*, 2024 WL 3675948, at *6 (S.D.N.Y. Aug. 6, 2024) ("The Court disagrees that allowing employees to recover 100% of late wages is a 'disposition that no reasonable person could intend.'") (citation omitted).

Petitioner conveniently ignores that the same statute offers an exemption to employers who exercise diligence and take affirmative steps to comply with the law. *See* NYLL § 191(1)(a)(ii) (" ... to pay less frequently than weekly but not less frequently than semi-monthly if the employer furnishes satisfactory proof to the commissioner of its continuing ability to meet its payroll responsibilities."). According to the New York Department of Labor, businesses have sought this

1

exemption since the 1980's. Petitioner is not the innocent victim of a random payroll error. Rather, Petitioner disregarded the mandates of a statute and refused to file for an exemption, as many other businesses did. Petitioner's refusal to comply with the law or seek an exemption does not constitute exceptional circumstances warranting interlocutory appeal.

Four district courts have previously denied interlocutory certification of this issue post *Grant*. *See Levy v. Endeavor Air Inc.*, 2024 WL 1422322 (E.D.N.Y. Mar. 29, 2024); *Zachary v. BG Retail, LLC*, No. 22-CV-10521 (S.D.N.Y. March 13, 2024 Transcript), Appx. 1-14; *Convington v. Childtime Childcare, Inc.*, No. 23-CV-00710 (N.D.N.Y. Sept. 17, 2024), Appx. 15-23; *Espinal v. Sephora USA, Inc.*, 2024 WL 4751279 (S.D.N.Y. Nov. 12, 2024). All of these courts reasoned that the moving party failed to establish a substantial ground for difference of opinion where the weight of authority leans almost unanimously in favor of the existence of a private right of action for violations of NYLL § 191.

With an apparent split in authority among the New York Appellate Divisions, district courts have weighed the competing appellate decisions to determine how the New York Court of Appeals ("NYCOA") would rule. *Bryant*, 2024 WL 3675948, at *3. As the majority have held that a private right of action exists, Petitioner cannot establish a difference of opinion among district courts.

Furthermore, an appeal to this Court will not materially advance the ultimate termination of this litigation. Currently, this issue is progressing through New York State courts. In the event the Appellate Division, Second Department reverses its prior decision, or the NYCOA agrees to hear the issue, action by this Court could be rendered moot.[1]

Certification to the NYCOA is similarly counterproductive. The NYCOA has previously declined to hear questions certified by this Court where, as here, an issue of state law was progressing through the New York appellate process. *See Rufino v. United States,* 69 N.Y.2d 310, 311-12, 506 N.E.2d 910, 911 (1987) ("... it is unquestionably preferable in the resolution of significant State law issues to secure the benefit afforded by our normal process-the considered deliberation and writing of our intermediate appellate court in a pending litigation."). Thus, Petitioner cannot establish that leave to appeal is appropriate.

## FACTUAL BACKGROUND

Petitioner Pregis, LLC ("Petitioner" or "Pregis") is a global manufacturer of flexible packaging and protective packaging. Complaint ("Compl.") No. 24-2891, ECF No. 2.1 (Pet. Appx) at A-2, ¶ 10. Plaintiff Lori Bazinett ("Respondent" or "Plaintiff") alleges that Petitioner employed her as a shipper/receiver. Compl. ¶ 11.

---

[1] A motion for reargument or the opportunity to appeal to the NYCOA is still pending in *Grant.* That application was filed on February 15, 2024.

Plaintiff alleges she was a manual worker as more than twenty-five percent of her duties were physical tasks, including but not limited to (1) filling shipment loads into trailers, (2) picking orders in the warehouse, (3) processing and tagging orders, (4) loading and unloading incoming and outgoing shuttles to the warehouse, and (5) operating a forklift. *Id.* ¶ 11. Despite being a manual worker, Petitioner failed to pay Plaintiff on a weekly basis during her employment. *Id.* ¶ 11.

As a manual worker, Plaintiff was injured in that she was temporarily deprived of money owed to her, and she could not invest, earn interest on, or otherwise use these monies that were rightfully hers. Accordingly, every day that said money was not paid to her in a timely fashion, she lost the time value of that money. *Id.* ¶ 11.

## PROCEDURAL BACKGROUND OF *VEGA*, *GRANT*, AND *BAZINETT*

In *Vega v. CM & Associates Construction Management, LLC*, the Appellate Division, First Department held unanimously that NYLL Section 191 and Section 198 confer an express private right of action for claims arising out of the untimely payment of wages. 107 N.Y.S.3d 286,288 (N.Y. App. Div. 2019) ("[Section] 198(1-a) expressly provides a private right of action for a violation of [Section 191].") The court specifically found that the term "underpayment" in Section 198(1-a) "encompasses the instances where an employer violates the frequency requirements of [Section 191(1)(a)] but pays all wages due before the commencement of an action." *Id*. The court further held that "even if [Section] 198 does not expressly

4

authorize a private action for violation of the requirements of [Section] 191, a remedy may be implied since plaintiff is one of the class for whose particular benefit the statute was enacted, the recognition of a private right of action would promote the legislative purpose of the statute and the creation of such a right would be consistent with the legislative scheme." *Id*. at 288-89 (citations omitted).

On January 17, 2024, the Appellate Division, Second Department held in *Grant v. Global Aircraft Dispatch, Inc.*, that Section 198(1-a) provides neither an express nor implied private right of action for manual workers who have been paid on a biweekly, rather than weekly, basis. 204 N.Y.S.3d 117, 125 (N.Y. App. Div. 2024). Whereas *Vega* was unanimous, the Honorable Linda Christopher issued a thoughtful dissent in *Grant* opposing the majority's holding that there is no private right of action for violations of NYLL 191. *Id*. at 125. On February 15, 2024, the Grant plaintiff filed a Motion for Argument and Leave to Appeal to NYCOA. To date, the Appellate Division, Second Department has not ruled.

In this case, the lower court rightfully denied Petitioner's June 5, 2023 motion to dismiss on March 14, 2024. The lower court agreed with the majority of other district courts that found a private right of action exists under § 191. *Bazinett v. Pregis LLC*, 720 F. Supp. 3d 154 (N.D.N.Y. 2024). Specifically, the lower court held that the evidence supplied by Petitioner was "not sufficiently 'persuasive evidence' to convince the Court that the New York Court of Appeals would reject *Vega*." *Id*.

at 164. Despite this holding, the lower court later granted Petitioner leave to amend and certify the March 14, 2024 Order. For the following reasons, the lower court erred and therefore this Court must deny Petitioner's motion.

## ARGUMENT

### I.    LEAVE TO APPEAL SHOULD BE DENIED

"An interlocutory appeal may be certified when it involves a 'controlling question of law as to which there is substantial ground for difference of opinion and ... an immediate appeal ... may materially advance the ultimate termination of the litigation.'" *Pineiro v. Pension Benefit Guar. Corp.*, 22 F. App'x 47, 48-49 (2d Cir. 2001) (quoting 28 U.S.C. § 1292(b)). "Only 'exceptional circumstances [will] justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment.'" *Id.* (quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 475, 98 S. Ct. 2454, 57 L.Ed.2d 351 (1978)).

### A.    Petitioner's "Question Presented" Is Improper

Appellate review pursuant to § 1292(b) is "limited to the certified order." *Swint v. Chambers Cnty. Comm 'n,* 514 U.S. 35, 50, 115 S. Ct. 1203, 1211, 131 L. Ed. 2d 60 (1995). Here, the certified order addresses whether "Section 191 of the New York Labor Law provides a private right of action when an employee is paid in full, but one week late." *See* No. 24-2891, ECF No. 6.1 at 4 (District Court Order).

Petitioner's question presented exceeds the issues covered by the order. *See e.g.,* No. 24-2891, ECF No. 1.1 at 4-5 ("If employers pay manual workers all the wages they earn on a bi-weekly rather than a weekly basis in technical violation of NYLL § 191, does the NYLL contain a private right of action permitting employees who received their wages in full to sue to recover an equal amount in liquidated damages for any alleged late payments (i.e., double pay) as well as prejudgment interest and attorneys' fees?").

Not only is Petitioner attempting to have this Court improperly rule on the permitted damages model, but Petitioner's inherently biased question also mixes factual issues with issues of law, rendering it improper for interlocutory appeal. *See e.g., Hart v. Ricks Cabaret Int'l, Inc.*, 73 F. Supp. 3d 382, 394 (S.D.N.Y. 2014).

**B. There Is No Substantial Ground For Difference Of Opinion**

Assuming *arguendo* that Petitioner has satisfied the "controlling question of law" element, leave to appeal should be denied because there is no "substantial ground for difference of opinion" regarding the question at bar. "District courts sitting in this Circuit have had the opportunity to weigh-in on *Grant* and address the split in authority- all but [two] have continued to follow *Vega* as the predominate authority and predict that the Court of Appeals is more likely to adopt the First

Department's conclusion." *Covington v. Childtime Childcare, Inc.*, 2024 WL 2923702, at \*4 (N.D.N.Y. June 10, 2024).

To date, thirteen district courts have followed *Vega*, post *Grant*. Despite two outlier decisions, "[g]ranting interlocutory appeal in every case where a party can cite to a few cases for their position would transform the procedure into a vehicle for a second bite at an appeal wherever there is a difficult issue, a function for which it was obviously not intended." *Hermes Int'l v. Rothschild*, 590 F. Supp. 3d 647, 656 (S.D.N.Y. 2022) (citation omitted).

Based on the near-unanimous decisions finding *Vega* persuasive, district courts have denied requests for interlocutory certification of the issue at bar. In denying interlocutory certification, the Honorable Vincent L. Briccetti reasoned that there was no "substantial ground for a difference of opinion because every federal court, including this one, to consider the question has agreed with *Vega* ..." *Zachary v. BG Retail, LLC*, No. 22-CV-10521 (S.D.N.Y. March 13, 2024 Transcript), Appx. at 4.

More recently, the Honorable Eric N. Vitaliano also denied leave for interlocutory certification, holding:

> Despite the split between the less-than convincing holding of the Second Department and that of the First Department, one would be hard pressed to say that there is "substantial ground for difference of opinion," where the

> weight of authority leans almost unanimously in favor of
> the existence of a private right of action under § 191.

*Levy*, 2024 WL 1422322, at *2. Similarly, in denying interlocutory certification in

*Espinal*, the Honorable Paul A. Engelmayer held that the "split is not deep" based

on federal courts' nearly unanimous agreement with *Vega*. *Espinal*, 2024 WL

4751279, at *5. Because of this, Judge Engelmayer correctly held that "the existence

of an outlier decision, *Grant*, is an insufficient basis on which to find a substantial

ground for difference of opinion." *Id*.

Finally, in *Covington*, the Honorable Brenda K. Sannes criticized the

*Birthwright* court's decision to certify the issue for interlocutory appeal, which

Petitioner relies on, stating:

> Although the Eastern District found that the statutory
> requirements of § 1292(b) were met, its order merely
> references 'conflicting views of the district courts' and
> *Vega* and *Grant* as the basis for a substantial ground for
> difference of opinion. The Court disagrees that *Galante*
> and *Grant* are sufficient to create a 'substantial' difference
> of opinion in light of the overwhelming authority that sides
> with Vega.

*Convington v. Childtime Childcare, Inc.*, No. 23-CV-00710 (N.D.N.Y. Sept. 17,

2024), Appx. at 20. Importantly, all of these decisions directly address *Grant,*

explicitly holding that the plain language of § 191 conflicts with *Grant* reasoning,

and that *Grant* is further undermined by the statute's legislative history.

### C. The Appeal Will Not Materially Advance The Ultimate Termination Of The Litigation And Certification To The NYCOA Would Be Futile

If any dispute concerning this issue actually exists, such a dispute is purely a matter of state law. However, as of the time of this brief, any "dispute" is neither legitimate nor ripe within New York State Courts. In the interim, district courts have continued to follow a line of cases favoring the enforcement of worker's right to timely pay, as set forth in the statutory framework. Simply put, "[t]he Second Circuit has really nothing to resolve. There is no dispute within the circuit." *Zachary v. BG Retail, LLC*, No. 22-CV-10521 (S.D.N.Y. March 13, 2024 Transcript) Appx. at 6.

Pending before the Second Department is a request for a reargument of *Grant* or, in the alternative, permission to appeal to the NYCOA. Accordingly, the state court appeal process could render an appeal to this Court moot. For instance, if reargument is granted and the Second Department reverses its prior decision, state courts would then align with the majority of district courts which have held that a private right of action exists. In the alternative, if the *Grant* plaintiff is permitted to appeal to the NYCOA and the appeal is heard, any decision from the NYCOA would bind federal courts. Denying Petitioner's request would save judicial time and resources while *Grant* advances through New York courts. *See e.g., Rev. Kornstein, Veisz & Wexler*, 159 F.3d 1346 (2d Cir. 1998) (dismissing "interlocutory appeals as improvidently granted" after further development of the issue in New York courts).

Judge Engelmayer recently articulated this exact issue in the context of NYLL

191 claims:

> The process of appeal to the Second Circuit, followed by its likely certification to the New York Court of Appeals, followed by the possible resolution in that Court of the issue, and followed by remand from the Circuit to this Court, could easily take more than a year. Only at that point would plaintiffs' claims, to the extent they survived the appeal, proceed to discovery, summary judgment, and trial. Yet, during the interlocutory appellate process, various circumstances could moot the issue. These include state legislative action establishing (or barring) a private right of action; reconsideration by the Second Department of its decision earlier this year in *Grant*, in light of, *inter alia*, the overwhelming federal authority rejecting its holding that there is no private right of action; or a resolution by the New York Court of Appeals of the issue as brought in a different case.

*Espinal*, 2024 WL 4751279 at *5. Judge Engelmayer further pointed out that given

the "decisive factual question underlying both liability and damages… is likely one

that will be resolved" with minimal discovery, "Sephora has not shown that the

incremental cost that it stands to expend by allowing the district court proceedings

in this case to run their course justify, or come close to justifying, the burdens posed

by interlocutory review." *Id*. The same rings true here.

"This case, in fact, thus supplies an excellent example of why the Second

Circuit has discouraged section 1292(b) certifications where it is not clear that

disposition of the certified issue on appeal would 'materially advance the ultimate

determination of [the] case.'" *Id.*, at \*5 (citing *Westwood Pharms., Inc. v. Nat'l Fuel Gas Distrib. Corp.*, 964 F.2d 85, 88 (2d Cir. 1992)); *see also Murray v. UBS Securities, LLC*, 2014 WL 1316472, at \*7 (S.D.N.Y. Apr. 1, 2024) ("Plaintiff's argument prevails only if this Court's decision is reversed; if the Second Circuit affirms the Court's decision, or rather yet, declines to hear Plaintiff's appeal, the result will be that this action will have been unnecessarily delayed by the interlocutory appeal. Moreover, it is safe to assume that the appeal process will take longer than the [proceedings in this court], thereby extending the time in which a final decision on the merits is rendered.").

What is more, the NYCOA has previously declined to review certified questions from this Court where, as here, the issue was proceeding through New York's appellate courts:

> The very questions now tendered for our review were only recently answered by Supreme Court, New York County, in *McDougald v. Garber,* 132 Misc.2d 457, 504 N.Y.S.2d 383, and are the subject of an appeal currently going forward in the Appellate Division, First Department. Were we to undertake to answer the certified questions now, by the extraordinary procedure of responding to specific questions from the Federal court rather than deciding a case fully before us for review, we would necessarily affect the ordinary State procedure now in actual progress for the resolution of these issues. In the circumstances, it is unquestionably preferable in the resolution of significant State law issues to secure the benefit afforded by our normal process-the considered deliberation and writing of our intermediate appellate court in a pending

litigation. We therefore decline to accept the certified questions.

*Rufino,* 69 N.Y.2d at 311-12; *See also Kidney v. Kalmar Labs., Inc.*, 808 F.2d 955, 957 (2d Cir.1987) ("[I]ssues of state law are not to be routinely certified to the highest court[] of New York ... simply because a certification procedure is available. The procedure must not be a device for shifting the burdens of this Court to those whose burdens are at least as great."). As a result, Petitioner's request should be denied.

## CONCLUSION

For the foregoing reasons, Petitioner's request should be denied.

Dated: November 14, 2024

Respectfully Submitted,

By: */s/ Yitzchak Kopel*

**BURSOR & FISHER, P.A.**
Yitzchak Kopel
1330 Avenue of the Americas
32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
E-Mail: ykopel@bursor.com

*Attorneys for Plaintiff-Respondent*

## CERTIFICATE OF COMPLIANCE

This brief complies with the word limit of Fed. R. App. P. 5(c)(l) because,

excluding the portions exempted by Fed. R. App. P. 32(l).

[X] this brief contains 3,603 words

[ ] this brief uses monospaced type and contains [ ] lines

This brief also complies with the typeface requirements of Fed. R. App. P. 32(a)(5)

and the type-style requirements of Fed. R. App. P. 32(a)(6) because:

[X] this brief has been prepared in a proportionally spaced typeface using

Microsoft word in 14-point Times New Roman font; or

[ ] this brief or other document has been prepared in a monospaced typeface using

[] or [ ].

November 14, 2024                                  Respectfully Submitted,

                                                   By: */s/ Yitzchak Kopel*

                                                   **BURSOR & FISHER, P.A.**
                                                   Yitzchak Kopel
                                                   1330 Avenue of the Americas
                                                   32nd Floor
                                                   New York, NY 10019
                                                   Telephone: (646) 837-7150
                                                   Facsimile:  (212) 989-9163
                                                   E-Mail: ykopel@bursor.com

                                                   *Attorneys for Plaintiff-Respondent*

# APPENDIX

## TABLE OF CONTENTS

PAGE(S)

March 13, 2024 Hearing before the Hon. Vincent L. Bricetti
 *Zachary v. BG Retail, LLC,* 22-cv-10521 (S.D.N.Y.)………………….….A-1

September 17, 2024, Order Denying Motion for Interlocutory Certification
 *Covington v. Childtime Childcare, Inc., et al.,* 23-cv-00710 (N.D.N.Y.)......A-15

i

```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------------x

 3   TOVA ZACHARY, Individually and on
     Behalf of others similarly situated,
 4
                         Plaintiff,
 5
                 v.                              22 CV 10521(VB)
 6
                                                      DECISION
 7   BG RETAIL, LLC,

 8                        Defendant.

 9   ------------------------------------x

10                                      United States Courthouse
                                        White Plains, N.Y.
11                                      March 13, 2024

12

13

14

15

16   Before:  THE HONORABLE VINCENT L. BRICCETTI, District Judge

17

18

19                            APPEARANCES

20

21   LEEDS BROWN LAW, P.C.
          Attorneys for Plaintiff
22   BRETT R. COHEN

23

     OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
24        Attorneys for Defendant
     KELLY CARDIN

25
```

2

1    THE DEPUTY CLERK:  In the matter of Tova

2  Zachary v. BG Retail, LLC.

3    Will counsel please note your appearances for the

4  record.

5    MR. COHEN:  Good morning, your Honor.  Brett Cohen

6  from Leeds Brown for plaintiff Zachary in the putative class.

7    THE COURT:  Welcome.  Have a seat.

8    MS. CARDIN:  Good morning, your Honor.  Kelly Cardin

9  from Ogletree, Deakins for BG Retail, the defendant.

10    THE COURT:  Welcome.  Have a seat.

11    MS. CARDIN:  Thank you.

12    THE COURT:  All right.  This is an initial conference

13  on this case, but there's also a pending motion that was filed

14  by defendant asking that the Court amend its decision of

15  February 12th and certify that order for interlocutory appeal

16  to the Second Circuit.  A little bit of a misnomer because I

17  don't get to decide whether there's an interlocutory appeal.

18  At most, I could suggest to the Second Circuit that they would

19  take it as an interlocutory appeal.  They almost never do that,

20  but they do it sometimes.

21    Anyway, I'm going to deny that motion because what

22  the defendant really wants here and what defendant really needs

23  here is for the New York State Court of Appeals, not the Second

24  Circuit, but the New York State Court of Appeals to resolve

25  this question or for the Legislature to change the law in New

CHRISTINA M. ARENDS-DIECK, RPR, RMR, CRR
(914)390-4103

1    York State, but at least as of now, the Court of Appeals has
2    not done that.  I have no idea whether the Grant decision which
3    disagreed with the Vega decision will find its way to the Court
4    of Appeals, but it seems likely that it will.  You have a split
5    among the appellate divisions and you have a dissent in the
6    Grant case.  I'm not an expert on state court appellate
7    litigation, but that does sound like the kind of case that the
8    Court of Appeals would typically take.

9            You know, I could -- I could -- and I think I have
10   the power to do this -- I'm not required to do it, but I have
11   the power to do this -- I could certify the question and put
12   everything on hold until we hear from the New York Court of
13   Appeals or at least hear from the Second Circuit that they've
14   declined to hear the appeal.

15           The plaintiff, I should add, doesn't necessarily
16   oppose certifying it for interlocutory appeal, but says that I
17   shouldn't stay the action in the meantime.  That doesn't really
18   make sense to me.  If I'm going to certify it, I'm going to
19   stay it.  It just seems like the whole point of it is to get
20   the matter resolved.  So I appreciate your position, I'm not
21   saying it's a frivolous position, but I'm not going to do a
22   hybrid approach here.  It's either going to be certified and
23   stayed or not.  Anyway, that's one option.

24           The second option is to go forward with this case
25   and, of course, keep an eye out for any New York State Court of

1    Appeals decision or legislative action, but, like I say, go

2    forward with the case.

3            The second option is the one that I've decided to

4    adopt.  There's a statute, of course, that addresses this,

5    which addresses the question of interlocutory appeal.  It's 28,

6    United States Code, Section 1292(b), which says, "When a

7    district judge, in making in a civil action an order not

8    otherwise appealable under this section" -- and certainly this

9    would be such an order -- "shall be of the opinion that such

10    order involves a controlling question of law as to which there

11    is substantial ground for difference of opinion and that an

12    immediate appeal from the order may materially advance the

13    ultimate termination of the litigation, he shall so state in

14    writing in such order."

15            So, in my view, first of all, I don't believe there a

16    substantial ground for a difference of opinion because every

17    federal court, including this one, to consider the question has

18    agreed with Vega, the First Department decision from I believe

19    2019, 2020.

20            What was the year of Vega?

21            MR. COHEN:  '19, your Honor.

22            THE COURT:  2019.

23            Every federal court since Vega has agreed with Vega,

24    every single one, including after the Grant decision, which was

25    decided in January.  So, after Grant, I decided my case.

1    I believe it was Judge Karas who decided the Gamboa

2    case, G-A-M-B-O-A, which is 2024 WL 815523, and he agreed with

3    me and agreed that the likelihood is that the New York State

4    Court of Appeals would agree with Vega, which is what I have to

5    do.  Basically I'm being called upon to predict what the Court

6    of Appeals will do and I predicted it.  I'm not saying that the

7    defendant's argument is frivolous.  It certainly is not

8    frivolous, but, you know, I have to pick one position or the

9    other and I looked at it carefully and solicited additional

10   briefing from counsel and, at the end of the day, I decided

11   that Grant is wrong and Vega is right, or, more particularly,

12   that the likelihood is that the New York State Court of Appeals

13   will agree with Vega, not Grant.  Judge Karas came to the same

14   conclusion in the Gamboa case.

15       And then there's another case, Sarmiento, 2024 WL

16   806137.  Likewise -- I don't remember who the district judge

17   was in that case, but, likewise, in that case, the district

18   judge said no, that Vega is the better decided decision and,

19   therefore, the likelihood is that the State Court of Appeals

20   will follow Vega rather than Grant.

21       I did find another case.  Maybe you're aware of it.

22   A case named Urena.  I actually don't have the cite in front of

23   me, but the District Judge, Judge Marrero, did not decide the

24   question -- did not decide the motion to dismiss in the same

25   context as all these other cases, but simply directed the

1  parties to address the question of whether there should be an

2  interlocutory appeal.  And again, that's not a frivolous

3  approach, but I just don't see the point of that.  What would

4  the Second Circuit do?  The Second Circuit has really nothing

5  to resolve.  There is no dispute within the circuit.

6          The only thing that the Second Circuit could do, if

7  it wanted to, is take the appeal and then punt the appeal to

8  the State Court of Appeals, which it might do, but the better

9  way to go is for the State Court of Appeals to decide the case

10  based on an appeal of a state court decision, which is the

11  normal, ordinary way in which it does things.

12          MS. CARDIN:  Your Honor, I don't mean to interrupt

13  you, but --

14          THE COURT:  Well, you are interrupting.  Go ahead.

15          MS. CARDIN:  Thank you, your Honor.

16          I just wanted to make sure your Honor was aware of a

17  Western District decision from last week, Galante v. Watermark

18  Services.  So this is a decision that came out on March 7.  And

19  our reply in connection with this briefing is due I believe

20  tomorrow, so we were going to provide you with some additional

21  authority, but, in that case --

22          THE COURT:  I don't need a reply in this case, but go

23  ahead.  What's Galante?  I just Shepardized this this morning,

24  or cite checked this morning.  I didn't see that.

25          Is that in Westlaw, this case?

7

1          MS. CARDIN:  I don't know if it's it on Westlaw, but
2     it is a decision from the Honorable Frank Geraci of the Western
3     District.  And that case follows Grant, not Vega.  So there is
4     a difference of opinion at this point.

5          And I also believe the other case that you mentioned
6     that's not Regeneron, and I can find the precise name for you,
7     but I think that's a magistrate judge's ruling, which --

8          THE COURT:  Adopted by a district judge, right?

9          MS. CARDIN:  Okay.  I wasn't sure if it had been
10    adopted.

11         THE COURT:  And by the way, even if it's a magistrate
12    judge, the point is they agreed with Vega and disagreed with
13    Grant.

14         I appreciate that, but, in my opinion, it doesn't
15    change my basic point, which is that I feel very confident that
16    the New York State Court of Appeals will agree with Vega, not
17    with Grant.  Again, you know, Vega's been analyzed again and
18    again and again.  If there is a case which I'm not familiar
19    with, that's fine.  I guess that does create a split of
20    authority among district courts within the circuit, but it's
21    still not -- you can have a seat -- it's still not a split of
22    authority regarding a federal question, it's a split of
23    authority regarding a state law question, a pure question of
24    state law which is percolating through the state courts and
25    will presumably make its way to the Court of Appeals.

1    Also, 1292(b) requires that I find that an immediate

2    appeal from the order may materially advance the ultimate

3    termination of the litigation and I definitely don't think

4    that's the case.  If I certified the question for interlocutory

5    appeal, I would stay the action because there's really no other

6    logical way to proceed, and then we all would have to wait for

7    one of the following to occur.  We would have to wait for the

8    Second Circuit to permit an interlocutory appeal to be taken --

9    that takes some time -- or for the Second Circuit -- well, and

10   I would say.  So first they would have to permit it to proceed.

11   Secondly, they would have to certify the question to the New

12   York Court of Appeals.  And thirdly, the Court of Appeals would

13   have to decide the question.  And I certainly don't think that

14   these three layers of review would happen quickly.  In fact,

15   I'm quite certain that it would take a long time to do it.  And

16   so I don't see how certifying to the Second Circuit an

17   interlocutory appeal would "materially advance the termination

18   of this litigation."

19        So I just don't think it's appropriate here.  I just

20   don't.  If Judge Marrero, in his case, decides to do it, fine.

21   I have no quarrel with that if that's what he wants to do.  But

22   I gave it a lot of thought and I'm convinced that even though

23   the defendant's argument, as I say, is not frivolous, it's

24   wrong and that, under the state law, I feel very confident that

25   the likely outcome in the State Court of Appeals would be

1   consistent with Vega, not with Grant.

2          So, anyway, the bottom line is that the motion is

3   denied.

4          All right.  I've reviewed your proposed civil case

5   discovery plan and scheduling order and it looks fine to me.  I

6   do want to give you a couple of dates here.

7          First of all, you've got discovery being completed by

8   September 13th, 2024, so I want to give you a conference date

9   after that.

10         Donna, do you have a date?

11         THE DEPUTY CLERK:  How about September 18th at 10

12  a.m.?

13         THE COURT:  How does that work for you, Mr. Cohen?

14         MR. COHEN:  Your Honor, I just want to check the

15  Jewish holidays for a moment.

16         THE COURT:  That's not a Jewish holiday.

17         MR. COHEN:  Then that's fine for me, your Honor.

18         THE COURT:  Okay.

19         Ms. Cardin, how about September 18th at 10 a.m.?

20         MS. CARDIN:  That's fine, your Honor.

21         THE COURT:  Secondly, my form scheduling order

22  directs the parties to discuss settlement in good faith and so

23  I'm going to require you to do that.  And I'm also going to

24  require you to write me a joint letter regarding the status of

25  your settlement discussions and also indicating whether there's

1 anything the Court can do to assist with respect to those

2 discussions. And you need to do that by July 17th, which is

3 approximately just a few days after the close of the fact

4 discovery period in this case.

5 So I'm not ordering you to settle, but I am ordering

6 you to discuss it in good faith. And the only thing that you

7 can't say in that letter is we haven't discussed it. That

8 would be a violation of my court order. You do have to discuss

9 it. Like I say, you don't have to settle it.

10 I've had a couple of these cases before and they've

11 settled, so I know these cases will settle. Every case is

12 different, of course. Every client, if you will, is different,

13 but they do settle. Doesn't mean this one will, but it

14 certainly is worth a try for you to do so. So I'm going to

15 issue that order. That will get docketed today.

16 Let's see. Just a couple more comments about

17 settlement. You know, the plaintiff did survive the motion to

18 dismiss on this New York Labor Law Section 191 legal issue, but

19 it's not final. It just means you survived a motion to

20 dismiss. For example, if the discovery shows that your client

21 is not a "manual worker" -- and you've alleged it in the

22 complaint, so I have to accept that. You've alleged it

23 sufficiently, but that's before any discovery. You know, this

24 matter could come up again on summary judgment and I could end

25 up dismissing the case for reasons other than the question of

1   whether there's a private right of action.

2        Also, you have a high burden to establish damages

3   because I didn't rule on -- and I didn't have to, so I didn't

4   rule on the question of whether you're entitled to liquidated

5   damages.  I'm a little dubious of that.  I don't know.  We

6   didn't get into it.  I didn't make a ruling.  I made a ruling

7   that there was some damage, but the damage here -- the actual

8   damage, let's put it that way -- is pretty minor because it's

9   just the cost of not getting paid on a weekly basis as opposed

10  to getting paid on a biweekly basis.  So there's no question

11  that the full amount of -- at least my understanding is there's

12  no question that the full amount of wages that were due were

13  paid.  It's just they were paid late.  But only a little bit

14  late.  It's not like they weren't paid at all.

15       So establishing damages, I don't know.  That's going

16  to be a hill to climb, it seems to me.  And then, of course,

17  the legal issue in the state courts might get resolved against

18  you and if it does, then obviously this case is going to go

19  away.

20       You know, on the other hand, from the defendant's

21  perspective -- so that gives you an incentive to try and settle

22  this case.  From the defendant's perspective, in fact, you did

23  lose on the motion to dismiss.  You're telling me that there's

24  one other court that has gone the other way.  Well, that's

25  against, I don't know how many, 25 or 30 decisions that agreed

12

1  with Vega.  So maybe that case is right, but then again, maybe
2  it's not.

3          I would like to see it.  Do you have a citation or a
4  docket number or something?  I would like to look it just
5  because I'm curious.

6          MS. CARDIN:  Of course, your Honor.

7          THE COURT:  It's not going to change my decision, but
8  I'm curious what it says.

9          MS. CARDIN:  Sure, your Honor.  No problem.

10          So the docket is 6:23 CV 06227 and the case --

11          THE COURT:  Hold on a second.  623.  Must be 6:23.
12  Is that possible?

13          MS. CARDIN:  Correct, yes.

14          THE COURT:  Civil -- what was it?

15          MS. CARDIN:  06227.

16          THE COURT:  And it's a Western District of New York
17  case?

18          MS. CARDIN:  That's right.

19          THE COURT:  But you don't have a Westlaw cite or a
20  Lexis cite?

21          MS. CARDIN:  I doubt that it's -- I mean, it might be
22  published now, but literally March 7 is the date the order was
23  issued, so I'm not sure if it's been picked up by Westlaw.

24          I don't know if you have a Westlaw cite for it.

25          THE COURT:  Are you aware of this case, Mr. Cohen?

13

```
1          MR. COHEN:  Yes, your Honor.
2          THE COURT:  All right.  Anyway, I'll look at it, but
3     it doesn't change my ruling.  The motion is denied.
4          I'm just trying to say that I think the defendant
5     also has an incentive to settle because, at least for now, the
6     weight of authority cuts against it.  And you're entitled to
7     make the arguments you want to make, but that doesn't mean
8     you're going to prevail ultimately at the New York State Court
9     of Appeals, which is really where the battle is going to be
10    fought ultimately.  And if the Court of Appeals rules
11    differently than I ruled, that's perfectly fine.  Obviously, I
12    don't have the authorship here.  I was asked, because the law
13    requires me to do this, to make a decision as to what I believe
14    the likely outcome would be.  If I predicted incorrectly, so be
15    it.  That's fine.  But that's the ultimate authority is the
16    Court of Appeals.
17         MR. COHEN:  Your Honor?
18         THE COURT:  Yes.
19         MR. COHEN:  I have a Westlaw cite for you on that
20    one.
21         THE COURT:  Okay.
22         MR. COHEN:  It's 2024 WL 989704.
23         THE COURT:  989704?
24         MR. COHEN:  Yes, your Honor.
25         THE COURT:  Okay.  I'll take a look at it.
```

```
 1              Okay.  Anything else we need to address today?  I
 2    mean, any particular issues you think I should know about
 3    before you commence the discovery process?
 4              Mr. Cohen?
 5              MR. COHEN:  Nothing from plaintiffs, your Honor.
 6              THE COURT:  Ms. Cardin?
 7              MS. CARDIN:  No, thank you, your Honor.
 8              THE COURT:  All right.  So the scheduling order will
 9    get docketed today.  If you need me, you know where to find me.
10    And obviously, if there's a change in the law -- the state law,
11    that is -- you should let me know.
12              You should also let me know if Judge Marrero, in the
13    Urena case -- again, I don't have a cite for that, but it
14    popped up on Westlaw when I searched for any cases that had
15    cited Grant and Zachary, meaning this case, and it just did pop
16    up.  And apparently he's in the process of deciding whether to
17    certify the case, which, like I said, if he does, that's fine.
18    You should let me know if that happens as well.  Again, it
19    doesn't necessarily affect -- in fact, it does not bind me.
20    Another district judge's decision in this district or anywhere
21    else has no binding authority on my decision, but it certainly
22    would be worth knowing about and we'll take it from there.
23              Okay.  Have a good day.  And you know where to find
24    me if you need me.
                              ----
25
```

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

**JAMES COVINGTON,**

               **Plaintiff,**

**v.**

**CHILDTIME CHILDCARE, INC. et
al.,**

               **Defendants.**

_____

**1:23-cv-710
(BKS/MJK)**

## <u>SUMMARY ORDER</u>

On June 10, 2024, this Court issued a Memorandum-Decision and

Order that granted in part and denied in part defendants Childtime

Childcare, Inc. and Learning Care Group, Inc.'s motion to dismiss plaintiff

James Covington's proposed class action complaint (hereinafter "the

Memorandum-Decision and Order").  (Dkt. No. 28.)  Specifically, the Court

denied the motion as to Covington's claim that defendants failed to pay his

wages on a weekly basis as required by New York Labor Law (NYLL) §

191.[1]  (_Id._)  In so holding, the Court rejected defendants' contention that

NYLL § 191 contains no private right of action, either express or implied.

_____

[1]  The Court granted defendants' motion to dismiss as to Covington's NYLL
§ 195 claim.  (Dkt. No. 28 at 6-9.)  The Court's dismissal of the NYLL § 195 claim is
not at issue here.

(*Id.* at 9-14.)

On June 20, 2024, defendants filed the pending motion, seeking amendment of the Memorandum-Decision and Order pursuant to Rule 5(a)(3) of the Federal Rules of Appellate Procedure, certification of the issue of whether NYLL § 191 provides a private right of action for immediate interlocutory appeal to the Second Circuit pursuant to 28 U.S.C. § 1292(b), for the purpose of requesting that the Second Circuit certify the question to the New York Court of Appeals, and a stay of these proceedings pending disposition of such appeal (hereinafter "defendants' motion for amendment and certification").  (Dkt. No. 30.)  For the reasons that follow, defendants' motion for amendment and certification is denied.[2]

## A.    Certification for Interlocutory Appeal

A district court may certify for appellate review an order, that is not otherwise appealable, if the district court is "of the opinion that such order involves [(1)] a controlling question of law [(2)] as to which there is substantial ground for difference of opinion and [(3)] that an immediate appeal from the order may materially advance the ultimate termination of

---

[2]  The parties have also filed multiple notices of "supplemental authority."  (Dkt. Nos. 41, 44, 45, 55.)  None of the "supplemental authority" filed is binding on the Court, however, to the extent such authority is persuasive, it has been considered.

the litigation."  28 U.S.C. § 1292(b).  If an order does not include a certification to request permission to appeal, "the district court may [subsequently] amend its order, either on its own or in response to a party's motion, to include the required permission or statement."  Fed. R. App. P. 5.  Courts in this Circuit have found the second prong—whether there is substantial ground for difference of opinion—satisfied where "(1) there is conflicting authority on the issue, or (2) the issue is particularly difficult and of first impression for the Second Circuit."  *In re Enron Corp.*, No. 06-CV-7828, 2007 WL 2780394, at *1 (S.D.N.Y. Sept. 24, 2007).  "A mere claim that a district court's decision was incorrect," *id.*, or "the mere presence of a disputed issue that is a question of first impression, standing alone," *In re Flor*, 79 F.3d 281, 284 (2d Cir. 1996), is insufficient. A district court must "analyze the strength of the arguments in opposition to the challenged ruling when deciding whether the issue for appeal is truly one on which there is substantial ground for dispute."  *Id.*

The Second Circuit has cautioned that district courts should "exercise great care in making a § 1292(b) certification."  *Westwood Pharms., Inc. v. Nat'l Fuel Gas Distrib. Corp.*, 964 F.2d 85, 89 (2d Cir.1992).  As such, "[l]eave to appeal should be granted only in

3

exceptional circumstances because to do otherwise would contravene the well-established judicial policy of discouraging interlocutory appeals and avoiding the delay and disruption which results from such piecemeal litigation." *In re China Med. Techs., Inc.*, No. 12-13736, 2013 WL 6667789, at *9 (S.D.N.Y. Dec. 17, 2013) (internal quotation marks and citations omitted).

Such "exceptional circumstances," *id.*, are not present here because the second requirement for certification is not met, as there is no "substantial ground for difference of opinion," 28 U.S.C. § 1292(b). In the Memorandum-Decision and Order, the Court analyzed a split in New York law, regarding whether there exists a private right of action for violations of NYLL § 191.[3] (Dkt. No. 28 at 9-14.) As the Court explained, (*id.* at 11), "[w]here there is a split between state appellate departments, a federal court must determine how the New York Court of Appeals would decide the issue," *Pacho v. Enter. Rent-A-Car Co.*, 572 F. Supp. 2d 341, 346 (S.D.N.Y. 2008). Ultimately, the Court predicted that the Court of Appeals would agree with the decision of the Appellate Division, First Department in *Vega v. CM & Associates Construction Management, LLC*, 175 A.D.3d

---

[3] Then, and now, the New York Court of Appeals has not decided the issue.

4

1144 (1st Dep't 2019), which held that a private right of action (both express and implied) exists for the violation of the pay frequency requirement contemplated by NYLL § 191, as opposed to the decision of the Appellate Division, Second Department in *Grant v. Glob. Aircraft Dispatch, Inc.*, 223 A.D.3d 712, 715 (2d Dep't 2024), that "respectfully disagree[d] with the reasoning of *Vega* and decline[d] to follow it."  (*Id.*)

In carrying out the "imprecise but necessary task of predicting on a reasonable basis how the New York Court of Appeals would rule," *DiBella v. Hopkins*, 403 F.3d 102, 112-13 (2d Cir. 2005) (citation omitted), the Court carefully analyzed *Vega* and *Grant*, as well as the decisions of district courts that addressed the split in authority.  (Dkt. No. 28 at 9-14.)  As the Court noted, the overwhelming majority of district court decisions predicted that the Court of Appeals is more likely to adopt *Vega*.  (*Id.* at 12-13.)  And, the Southern District of New York most recently observed the same, stating that, "[s]ince *Grant*, almost all district courts in this circuit have predicted that the Court of Appeals would side with *Vega* and hold that there is either an express or implied private right of action for late payment of wages."  *Bryant v. Buffalo Exch., Ltd.*, No. 23-CV-8286, 2024

WL 3675948, at *3 (S.D.N.Y. Aug. 6, 2024) (collecting cases).[4]

Defendants rely on an order issued by the Eastern District of New York, wherein the court certified for interlocutory appeal the question of whether a plaintiff can bring a private right of action for an alleged pay frequency violation under NYLL § 191 to the Second Circuit. (Dkt No. 45 at 1-2 (citing *Birthwright v. Advance Stores Co.*, Inc., No. 22-593, Dkt. No. 72 (E.D.N.Y. July 24, 2024)).) Although the Eastern District found that the statutory requirements of § 1292(b) were met, its order merely references "conflicting views of the district courts" and *Vega* and *Grant* as the basis for a substantial ground for difference of opinion. (Dkt. No. 45, Attach. 1 at 2.) The Court disagrees that *Galante* and *Grant* are sufficient to create a "substantial" difference of opinion in light of the overwhelming authority that sides with *Vega*. *See Maddison v. Comfort Sys. USA (Syracuse)*,

---

[4] The legal landscape is no different now than it was when the Court issued the Memorandum-Decision and Order. Indeed, at that time only one district court decision had determined that the Court of Appeals is more likely to adopt *Grant*. *See Galante v. Watermark Servs. IV, LLC*, No. 23-CV-6227, 2024 WL 989704, at *7 (W.D.N.Y. Mar. 7, 2024). The same is true now, with the exception of one Report-and-Recommendation that has, at the time of this Summary Order, not yet been adopted by the Southern District. *See Espinal v. Sephora USA, Inc.*, No. 22 CIV. 03034, 2024 WL 3589604, at *1 (S.D.N.Y. July 31, 2024) (predicting that the Court of Appeals would follow the reasoning of *Grant* and conclude that NYLL § 191 does not permit an implied cause of action, and recommending that the defendant's motion to dismiss be granted). Meanwhile, district courts continue to issue decisions that agree that the Court of Appeals would follow *Vega*. *See, e.g.*, *Bryant*, 2024 WL 3675948, at *3.

*Inc.*, No. 5:17-CV-0359, 2018 WL 11409984, at *2 (N.D.N.Y. May 21, 2018) ("The fact that there may be limited authority to the contrary, and that the Second Circuit has not yet settled the issue, does not mean that there is substantial ground for difference of opinion.").  Indeed, at least two other courts, post-*Grant*, have denied motions for certification for interlocutory appeal on the question of whether there exists a private right of action for an alleged violation of  NYLL § 191 because the court found there was no substantial difference of opinion.  *See Levy v. Endeavor Air Inc.*, No. 1:21-CV-4387, 2024 WL 1422322, at *2 (E.D.N.Y. Mar. 29, 2024) *and* Dkt. No. 47, Attach. 2, Transcript of March 13, 2024 Conference, *Zachary v. BG Retail, LLC*, No. 22-cv-10521 (S.D.N.Y. Mar. 13, 2024).

Defendants obviously disagree with the Court's determination in the Memorandum-Decision and Order, however, such a disagreement does not entitle them to an interlocutory appeal.  *See U.S. ex rel. Drake v. NSI, Inc.*, 736 F. Supp. 2d 489, 503 (D. Conn. 2010) ("Substantial ground for a difference of opinion requires more than a claim that the court's ruling was wrong.").  "Despite the split between the less-than convincing holding of the Second Department and that of the First Department, one would be hard pressed to say that there is 'substantial ground for difference of

opinion,' where the weight of authority leans almost unanimously in favor of the existence of a private right of action under [NYLL] § 191." *Levy*, 2024 WL 1422322, at *2 (denying request to amend and certify order for interlocutory appeal).  Accordingly, amendment and certification of the Memorandum-Decision of Order is denied.

## B.    Stay

Defendants' request for a stay pending the disposition of the requested interlocutory appeal is rendered moot by the Court's denial of amendment and certification of the Memorandum-Decision and Order, and, accordingly, the request for a stay is denied.[5]

Accordingly, it is hereby

**ORDERED** that defendants' motion for amendment and certification

---

[5]  There are at least three cases in this Circuit where the district court has stayed proceedings pending a potential appeal of *Grant*.  *See, e.g.*, *Pry v. Auto-Chlor Sys., LLC*, No. 23 CIV. 4541, 2024 WL 3728981 (S.D.N.Y. Aug. 8, 2024) ("[P]roceedings in this action are hereby stayed pending the New York Court of Appeals' potential review of [*Grant*].); Order, *Sethy v. Victoria's Secret Stores, LLC*, No. 23 Civ. 3452 (S.D.N.Y. June 4, 2024), Dkt. No. 33 (staying case for 90 days to determine the status of a potential *Grant* appeal, with both parties' consent); *Urena v. Sonder USA Inc.*, No. 22 Civ. 7736, 2024 WL 1333012 (S.D.N.Y. Mar. 28, 2024) ("[F]urther proceedings in this action are hereby stayed pending potential New York Court of Appeals' review of [*Grant*].").  "But any decision by the Court of Appeals is far off, and it [is] not even certain that there will be one.  A motion for reargument and leave to appeal remains pending before the Second Department . . . .  The Court will not delay litigation for a decision that may never come." *Bryant*, 2024 WL 3675948, at *6.

(Dkt. No. 30) is denied; and it is further

**ORDERED** that the Clerk provide a copy of this Summary Order to

the parties.

**IT IS SO ORDERED.**

Dated:   September 17, 2024
        Syracuse, New York

Brenda K. Sannes
Chief U.S. District Judge

9